Submitted on record and briefs May 10, reversed and remanded in part; otherwise affirmed October 30, 1996

Skip MAGEE
and Janet Magee,
husband and wife,
*Appellants,*

*v.*

Oscar DYRDAHL
and Viki Jo Dyrdahl, aka Viki McLaughlin,
*Respondents,*
*and*

UNITED STATES OF AMERICA,
STATE OF OREGON,
by and through Dept. of Revenue,
and Laura Hardin,
*Defendants.*

(91-2151-E-2; CA A83921)

926 P2d 319

Patrick G. Huycke filed the briefs for appellants.

Respondents filed the brief *pro sese*.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Plaintiffs appeal a judgment entered in an action for foreclosure of trust deeds and recovery under notes. The trial court entered judgment in favor of plaintiffs on three of their five claims for relief. On appeal, plaintiffs contend that the trial court erred in failing to award them attorney fees, in failing to award the proper interest amount on one of the notes, in failing to award judgment at all on another of the notes and in dismissing their fifth claim with prejudice. On *de novo* review, ORS 19.125(3), we reverse in part and affirm in part.

At issue in this case are five business loans executed in the form of promissory notes and accompanying trust deeds. The first note was executed in June 1988, by both Oscar and Viki Jo Dyrdahl[1] (husband and wife) to Owen and Neva MacPhee, who are not parties to this action, in exchange for a loan of $27,000 bearing 16.5 percent interest. The trust deed securing this note was executed by Viki Jo Dyrdahl only. The second note and trust deed were executed by defendant Oscar Dyrdahl only to the MacPhees later in June 1988, in exchange for a loan of $20,000 bearing 16.5 percent interest. Eventually, the MacPhees assigned both notes and trust deeds to plaintiffs Skip and Janet Magee. The third note and trust deed were executed by defendant Oscar Dyrdahl to plaintiffs in February 1990, in exchange for a loan of $5,000 bearing 15 percent interest. The fourth note was executed by defendant Oscar Dyrdahl in February 1990, and the trust deed was executed by both defendants to plaintiffs in March 1990, in exchange for a loan of $20,000 bearing 15 percent interest. The fifth note and trust deed were executed by defendant Oscar Dyrdahl to plaintiffs in August 1991, in exchange for a loan of $30,000 bearing 15 percent interest. Each note included an acceleration clause and an agreement by the maker to pay the lender's attorney fees upon default.

---

[1] Defendants United States of America, State of Oregon and Laura Hardin are not parties to the appeal. Accordingly, when we refer to "defendants" in this opinion, we mean Oscar and Viki Jo Dyrdahl.

Defendants made few, if any, payments on the notes. Plaintiffs invoked the acceleration clause, making all principal and accrued interest immediately due and payable.

Plaintiffs sued defendants for foreclosure of the trust deeds and for waste resulting from defendants' logging of one of the properties for which plaintiffs had a trust deed. In five claims, corresponding to each of the five notes, plaintiffs prayed for foreclosure, for a deficiency judgment should sale proceeds be inadequate to satisfy the debts, and for attorney fees and costs.

The case was tried to the court. At plaintiffs' request, the trial court dismissed their fifth claim. After trial, the court filed a written opinion and findings. On August 27, 1993, defendants filed objections to the court's proposed findings. The court held a hearing on the objections on September 20, 1993, and ultimately ordered several changes to its findings. The court directed plaintiffs' attorney to submit a proposed form of judgment in conformance with its oral ruling. When plaintiffs' attorney had not done so by March 14, 1994, defendants' attorney submitted a proposed form of judgment disposing of all claims. That proposed judgment was signed and entered by the trial court.

The judgment, as relevant to this appeal, explicitly resolved plaintiffs' first three claims in their favor: On the first claim, the trial court entered judgment in favor of plaintiffs in the amount of $26,574.81 plus 16.5 percent interest and costs and disbursements. The trust deed was ordered foreclosed. On the second claim, plaintiffs were awarded $19,585.67 plus 16.5 percent interest and costs and disbursements. The trust deed was ordered foreclosed. On the third claim, the trial court awarded plaintiffs $5,000 and costs and disbursements. No mention of interest was made regarding this claim. The trust deed was ordered foreclosed. The fourth and fifth claims were not explicitly mentioned. However, the judgment provides:

"Each and every other claim, counterclaim and form of relief prayed for by plaintiffs and defendants * * * as between these parties is denied and hereby dismissed with prejudice."

■ Plaintiffs first assign error to the trial court's failure to award them reasonable attorney fees in connection with their first, second and third claims. Plaintiffs assert that, under the corresponding notes and trust deeds, defendants agreed to pay plaintiffs' attorney fees in the event of defendants' default. They contend that, in these circumstances, ORS 20.096(1) requires the trial court to award attorney fees to them as the prevailing parties. Defendants assert that plaintiffs did not request attorney fees at trial and cannot do so for the first time on appeal.

ORCP 68, which governs the "pleading, proof, and award of attorney fees in all cases," requires that, to obtain an award of attorney fees, a party must timely file a "signed and detailed statement" setting forth the amount of fees requested. ORCP 68 C(4)(a)(i). In this case, plaintiffs filed no request at all. The trial court did not err in failing, in effect, to award plaintiffs attorney fees *sua sponte*. *Hitchman v. Burkey*, 95 Or App 508, 513, 769 P2d 799 (1989).

■ Plaintiffs next assign error to the trial court's failure to award them interest arising from the $5,000 note that was the basis for their third claim for relief. Defendants respond that the trial court correctly declined to award interest because the interest rate in the note was usurious. Plaintiffs contend that the usury statute does not apply to loans over $50,000 and that, because defendants owed plaintiffs far more than $50,000 in the aggregate, the usury statute does not apply. We agree with defendants.

ORS 82.010 provides, in part:

"(1) The rate of interest * * *, *if the parties have not otherwise agreed to a rate of interest,* is nine percent per annum * * *.

"* * * * *

"(2) Except as provided in this subsection, the rate of interest on judgments for the payment of money is nine percent per annum.

"* * * * *

"(e) *A judgment on a contract bearing more than nine percent interest shall bear interest at the same rate provided in the contract as of the date of entry of the judgment.*

"(3) Except as provided in ORS 82.205, no person shall:

"(a) *Make a business or agricultural loan of $50,000 or less at an annual rate of interest exceeding the greater of 12 percent,* or five percent in excess of the discount rate, including any surcharge on the discount rate, on 90-day commercial paper in effect at the Federal Reserve Bank * * *, on the date the loan or the initial advance of funds under the loan is made * * *.

"* * * * *

"(4) Any person who violates subsection (3) of this section shall forfeit the right to collect or receive any interest upon any loan for which a greater rate of interest or consideration than is permitted by subsection (3) of this section has been charged, contracted for or received. The borrower upon such loan shall be required to repay only the principal amount borrowed."

(Emphasis supplied.) Thus, if the loan amount was over $50,000, interest will accrue at the amount to which the parties agreed. Conversely, if the loan amount was $50,000 or less, then the limitation and penalty of ORS 82.010(3) and (4) apply. We turn, then, to plaintiffs' argument that, although the particular note on which they seek relief was for $5,000, for the purpose of examining the applicability of ORS 82.010(3) and (4), we must aggregate all of the notes that they executed with defendants.

To decide that issue, we must construe the language of ORS 82.010(3)(a): "a * * * loan of $50,000 or less." In construing that language, we attempt to ascertain the intentions of the legislature by examining the text, context, and, if necessary, the legislative history of the statue. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Relevant to our examination is any prior judicial construction of the same or similar language. *See State v. Guzek*, 322 Or 245, 255, 906 P2d 272 (1995); *Moe v. MVD*, 133 Or App 75, 78, 889 P2d 1334 (1995).

The statute provides that the interest rate for a business loan cannot exceed either 12 percent or 5 percent above the discount rate. To calculate the second figure, one looks at the discount rate "on the date the loan or the initial advance of funds under the loan is made." ORS 82.010(3)(a). The language of the statute, therefore, indicates that separate loans cannot be aggregated, because different discount rates would exist on different days, and there would not be a single benchmark from which to determine whether the interest rate on an aggregation of the loans was usurious. That is not to say that the statute would not apply to a single loan under which a borrower receives more than one advance of funds at different times; the statute does apply to such a loan, as the reference to "the initial advance of funds" makes clear. The question is thus whether the parties in this case negotiated a single loan with multiple disbursements or multiple, separate loans.

Our opinion in *Heuberger v. Rounsefell*, 97 Or App 579, 776 P2d 596 (1989), is instructive. In that case, the defendants signed a note agreeing to pay the plaintiff $8,498.55 at 9.5 percent interest. The defendants made some payments, but when they were unable to pay the note in full on the due date, they signed a second note. Under that note, they agreed to pay $8,498.55 at 15 percent interest. Again unable to pay in full by the due date, the defendants signed a third note for $7,380.63 at 15 percent interest. After the defendants defaulted on the third note, the plaintiff sued. In their answer, the defendants asserted the affirmative defense that the plaintiff was entitled to no interest because the rate was usurious under ORS 82.010(3). Specifically, they argued that, given the discount rates in effect when the second and third notes were signed, the interest rates exceeded the limitation in the usury statute. The plaintiff responded that the two later notes did not represent separate loans, and so the interest limitation provision of the usury statute should be applied only to the first note. We disagreed, finding that the later transactions in effect paid off the earlier loans and established new interest and payment terms. *Heuberger*, 97 Or App at 582. If the defendants had paid off the first loan by taking out a loan from a different lender, we commented, the interest rate unquestionably would have been usurious.

"We see no reason why a second loan from the same lender should be treated differently from a separate loan from a separate lender." *Id.*

Unlike the parties in *Heuberger*, the parties in this case did not merely renegotiate a single debt. Instead, they negotiated a series of deals at different times, each with varying principal, interest, security and due dates. Indeed, two of the notes were originally negotiated with parties other than plaintiffs. We find, in short, no basis for concluding that the separate notes involved in this case were but a series of disbursements from a single loan transaction. Because the note on which the third claim was based was for "$50,000 or less," and its rate of interest exceeded the amount allowable by ORS 82.010(3)(a), plaintiffs forfeited the right to collect any interest. ORS 82.010(4). Accordingly, the trial court did not err in failing to award interest on the third note.

■ Plaintiffs next assign error to the trial court's failure to award them a judgment on their fourth claim for relief, which arose from a $20,000 note and trust deed. Plaintiffs observe that the trial court's opinion and findings make no mention of the fourth claim for relief. The judgment merely dismisses "[e]ach and every other claim" not specifically mentioned. Plaintiffs hypothesize that the trial court inadvertently "skipped over" that claim. Plaintiffs assert that the undisputed evidence shows that they received one $457 payment on the fourth note, which brought interest current to April 6, 1990, but received no further payments. Plaintiffs contend that they are entitled to judgment on the note, including interest at the note rate of 15 percent from April 6, 1990, as well as attorney fees and costs. In response, defendants argue that plaintiffs never gave them $20,000 and that they received only $11,084. Plaintiffs reply that the difference between the face value of the note and the amount defendants received is attributable to closing costs and to "interest owing on other outstanding loans which had been advanced prior to the date of the $20,000 loan." Defendants rejoin that, even if plaintiffs are entitled to relief on this claim, they are not entitled to interest, because the interest rate was usurious.

We agree with plaintiffs that the trial court erred in failing to enter judgment in their favor on this claim. On

*de novo* review of the evidence, we find that the reason defendants received less than $20,000 upon execution of this note was in part that the escrow agent withheld $8,336 to cover interest due on prior loans and that the remainder, $580, was the amount of closing costs charged by the escrow company.

■　　We agree with defendants, however, that the interest rate on this note was usurious for the reasons set forth in our discussion of the second assignment of error. Thus, plaintiffs are entitled to no interest payments under this loan, and the $457 payment must be attributed to principal. We direct the entry of judgment on this claim for $19,543, which represents the $20,000 initial loan amount less $457 in payment on principal.

■　　Finally, plaintiffs assign error to the trial court's dismissal of their fifth claim with prejudice. Plaintiffs argue that, under ORCP 54 A(2), dismissals are to be without prejudice, unless otherwise requested. When plaintiffs requested during trial that this claim be dismissed, they did not request that it be dismissed with prejudice.

　　Plaintiffs misread ORCP 54 A(2). That rule provides, in part:

> "Except as provided in subsection (1) of this section, an action shall not be dismissed at the plaintiff's instance save upon judgment of dismissal ordered by the court and upon such terms and conditions as the court deems proper. * * * Unless otherwise specified in the judgment of dismissal, a dismissal under this subsection is without prejudice."

The rule does not require a trial court to dismiss an action without prejudice unless the moving party requests otherwise; the rule merely fills a gap should the trial court fail to indicate in the judgment whether the dismissal is with or without prejudice. Here, the judgment specified that the dismissal was with prejudice, so that portion of the rule is not even brought into play. The trial court did not err.

　　Reversed and remanded for entry of judgment in favor of plaintiffs on their fourth claim; otherwise affirmed.