Argued and submitted January 4, affirmed June 1, 2005

William LEE
and Pamela Lee,
*Respondents,*

*v.*

Dieter KOEHLER,
*Appellant.*

02CV0006; A123137

112 P3d 477

Greg Hendrix argued the cause for appellant. With him on the brief was Hendrix, Brinich & Bertalan, LLP.

James A. Wallan argued the cause for respondents. With him on the brief was Hornecker, Cowling, Hassen & Heysell, L.L.P.

Before Landau, Presiding Judge, and Armstrong, Judge, and Deits, Judge pro tempore.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant appeals a judgment for plaintiffs in a dispute arising out of a contract to sell real property. Plaintiffs brought a claim for specific performance of the contract, and, in the alternative, a claim for damages for breach of the contract. The trial court entered judgment for defendant on the specific performance claim but entered judgment for and awarded damages to plaintiffs on the breach of contract claim. We affirm.

The property at the heart of this dispute is approximately 40 acres of undeveloped land near Powell Butte in Crook County. Plaintiffs, with the assistance of their real estate agent, offered to purchase the property from defendant. The parties negotiated and entered into a detailed purchase agreement on September 27, 2001. The purchase agreement consisted of a preprinted "Real Estate Sale Agreement" and two addenda, Addendum B and Addendum C.[1] Four provisions of the contract are relevant to this dispute.

First, the agreement provided that defendant would pay for plaintiffs' legal expenses with regard to the purchase of the property. During the negotiations, plaintiffs' real estate agent resigned. To avoid paying a commission to a new agent, defendant asked plaintiffs not to retain another real estate agent. Instead, he suggested that plaintiffs retain an attorney to complete the transaction, whose fees defendant agreed to pay. Plaintiffs accepted defendant's offer, and the parties incorporated their agreement on that point in Addendum C to the purchase agreement, which, in relevant part, provided:

"1.   The Seller shall pay the Buyer's Attorney costs in representing the Buyer in this matter up to a maximum amount of $5,000 under the following terms[:]

"a.   The first $1,250 in Buyer's legal fees, at the Buyer's choice the Seller shall either pay the Buyer's Attorney directly or reimburse the Buyer upon presentation of charges.

---

[1] Addendum A was part of plaintiffs' initial offer and was not agreed to by defendant. Its terms were modified to defendant's satisfaction and included in Addendum B.

"b.  The next $1,250 in Buyer's legal fees, the Buyer shall pay, however the Seller shall reimburse the Buyer for these costs at the close of this contract or the close of escrow, which ever comes first.

"c.  Beyond $2,500 in Buyer's legal fees, the Buyer and Seller shall both pay one half and the Seller's portion shall be paid at the Close of Escrow."

Second, the contract tied the closing date of the sale of the subject property to the closing date of the sale of plaintiffs' home in Bend, then scheduled for January 1, 2002. The preprinted "Real Estate Sale Agreement" provided that "TIME IS OF THE ESSENCE" with regard to closing and that the closing date could be extended, in certain circumstances, a maximum of five business days.

Third, among a list of "contingencies," the contract provided:

"Along the south boundary of the property, there is a 50-foot road easement which the existing road may or may not be contained within, however access to this road easement is guaranteed to the owner(s) of subject property being purchased herein."

Plaintiffs insisted on that provision because they wanted to ensure that they would have access along the south boundary of their property despite the existence of other access to the property. Defendant agreed to the provision because, at the time, he mistakenly believed that he possessed the right to use the road. He believed that the road was located either on the subject property or within an easement that he had created on the adjoining property to the south when he owned that property. He had granted the easement to Lamm, who needed the easement for access to his property located to the southeast of the subject property. However, Lamm later purchased the property that was burdened by the easement. Thus, the easement was extinguished by the merger of the servient and dominant estates. The road was, in fact, located in part on the subject property and in part on the neighboring property. Therefore, defendant would have had to reacquire easement rights from Lamm in order to comply with the guarantee in the sales agreement.

The final relevant detail of the purchase agreement is an attorney fee provision in the preprinted form. That provision states that "[t]he prevailing party in any suit, action or arbitration (excluding those filed in Small Claims Court) shall be entitled to recovery of all reasonable attorney fees and costs (including all filing and mediator fees paid in mediation) pursuant to ORCP 68."

This litigation arose after defendant refused to extend the closing date of the agreement beyond January 2002. The buyers of plaintiffs' Bend property requested that plaintiffs extend the closing date on that property to May 1, 2002, and plaintiffs agreed in early November 2001 to do that. Plaintiffs believed that such an extension automatically extended their contract with defendant because the language of the purchase agreement linked the two closings. Plaintiffs informed their attorney that they intended to provide defendant with a "Notice of Change in Close of Escrow Date," in which plaintiffs purported unilaterally to modify the closing date to May 1, 2002. Plaintiffs' attorney advised plaintiffs that it would be more diplomatic to present the modification as a request. On that advice, plaintiffs presented defendant with a document styled Addendum D and dated December 22, 2001, that would have modified the closing date to May 1, 2002. Defendant refused to sign Addendum D.

On January 4, 2002, defendant notified plaintiffs that he was terminating the purchase agreement and returning their earnest money. Plaintiffs then brought this action for specific performance and breach of contract and filed a *lis pendens* on the property.[2]

Having found another buyer for the subject property, defendant wanted the *lis pendens* removed, so he filed a motion for a mandatory injunction to remove it. After a three-day hearing, in which both parties testified in great detail about the facts and circumstances surrounding their contract, the trial court denied defendant's motion. The parties

---

[2] Defendant brought several counterclaims on which judgment was entered for plaintiffs. They are not at issue in this appeal.

then filed cross-motions for summary judgment and stipulated that the transcripts from the injunction hearing constituted the facts on which the court should make its decision. The court granted summary judgment for defendant on plaintiffs' claim for specific performance and granted summary judgment for plaintiffs on their breach of contract claim. The court concluded that defendant had breached the purchase agreement because he was unable to guarantee access to the road on the south boundary of the property. The court postponed ruling on the question of damages and the question of the legal fees that plaintiffs claimed under Addendum C.

Those two questions were tried to the court on August 21, 2003. At trial, plaintiff William Lee testified that the damages resulting from defendant's breach consisted of the expense of a well draw-down test to determine whether the well on the property was sufficient for their needs. Lee also testified that they had presented a statement of their legal expenses under Addendum C but that defendant had breached the contract by refusing to pay it. Plaintiffs offered into evidence an invoice from their attorney. Defendant did not object, and the court admitted the invoice into evidence. The invoice consisted of a list of dates, services performed on those dates, and a total of charges. The services were provided between December 21, 2001 and January 21, 2002, and the total bill was for $1,522.50. Although he argued to the court as factfinder that the invoice was problematic because it did not segregate the services into those performed in furtherance of the purchase agreement and those in anticipation of litigation, defendant did not move for judgment as a matter of law or otherwise challenge the legal sufficiency of the evidence. The court declined to award plaintiffs the cost of the well draw-down test, but it did award them the $1,522.50 in attorney fees as the sole item of damages. The court entered a final judgment in the case on November 7, 2003, from which defendant appealed.

Defendant makes three assignments of error. First, he assigns error to the trial court's conclusion that he had breached the purchase agreement with regard to access to the south boundary road. Second, he assigns error to the trial court's award of damages for unpaid legal fees. Finally, he

assigns error to the trial court's failure to award him attorney fees under the purchase agreement as the prevailing party in the action. For reasons that will become clear, we address defendant's second assignment first.

Defendant raises two issues in support of his second assignment of error. First, he argues that the court erred in awarding attorney fees as damages for a breach of Addendum C because the invoice supporting the damage award was not sufficiently detailed to allow the court to determine the cost of the legal services provided to plaintiffs before the contract terminated on January 4, 2002, and those provided after that date. Second, defendant argues that, because plaintiffs breached the contract by failing to tender the purchase price on the closing date and by bringing this litigation, his duty to pay attorney fees under Addendum C was discharged. Neither of those issues is preserved.

■       Defendant's argument that the invoice from plaintiffs' attorney was not detailed enough to support a damage award under Addendum C amounts to a challenge to the sufficiency of the evidence. It is well established that, "in civil cases tried to the court without a jury, a litigant may not raise the sufficiency of the plaintiff's evidence on appeal unless he has asserted the legal insufficiency of the evidence in the trial court." *Falk v. Amsberry*, 290 Or 839, 843, 626 P2d 362 (1981). In *Falk*, the Supreme Court explained that

> "[t]he reasons for requiring a motion testing the sufficiency of the plaintiff's evidence in a jury trial as a condition for considering the sufficiency of the evidence on appeal apply with equal force in civil actions tried to the court. Lack of proof of a necessary fact may be overlooked if not brought to the attention of the trial court. An appropriate motion may allow the trial court to avoid entry of an erroneous judgment if the necessary proof cannot be supplied, thus preventing appeals and retrial on that basis."

*Id.*

As noted above, defendant moved neither for a judgment of dismissal under ORCP 54 B nor for judgment as a matter of law, nor did he object to the admission of the invoice into evidence. Although in his closing argument defendant complained of the lack of detail in the attorney's invoice,

those complaints were made to the court as the factfinder. The *Falk* rule required defendant to challenge the legal sufficiency of plaintiffs' evidence in some cognizable manner. He did not do so.

■       Likewise, defendant failed to preserve the issue whether plaintiffs' breach of the parties' agreement relieved defendant of his duty under Addendum C to pay plaintiffs' attorney fees. Defendant asserts that this argument is preserved in his closing argument at the damages trial. However, the question whether plaintiffs' breach discharged defendant's duty to pay plaintiffs' attorney fees as damages under Addendum C is a legal question. At no time during the trial to the court did defendant put that question to the court as a question of law, as he could have done by moving for judgment as a matter of law. He did not raise that question in his earlier motion for summary judgment. In its ruling on that motion, the court stated, "The addendum C issue of attorney fees is not settled by the Court's rulings." Thus, at no time did the trial court have before it the legal question whether plaintiffs' breach of the purchase agreement discharged defendant's duty under Addendum C to pay plaintiffs' attorney fees. For the reasons explained, we will not consider defendant's second assignment of error because he has not preserved it. *Green v. Holz*, 130 Or App 545, 548, 882 P2d 1137 (1994).

■       Because defendant did not preserve the issues involved in the second assignment of error, we conclude that, even if he is correct about his first assignment of error, any error is harmless. Defendant asserts in his first assignment that the "trial court erred in finding that defendant breached the real estate sale agreement by failing to satisfy a condition not due before plaintiffs' material breach of the agreement." The condition to which defendant refers is plaintiffs' access to the road on the south boundary of the property.

Error is harmless if it does not substantially affect the rights of a party. ORS 19.415(2). Defendant argues that the court's error in concluding that he breached the contract by failing to guarantee access to the road prevents him from being the prevailing party on the breach of contract claim for purposes of attorney fees under the purchase agreement. As

we recently noted in another context, "ORCP 68 C(2) contemplates that, if particular circumstances are satisfied, a party has a 'right' to attorney fees." *Galfano v. KTVL-TV*, 196 Or App 425, 438, 102 P3d 766 (2004). Thus, an error that affects defendant's right to attorney fees as a prevailing party on the breach of contract claim is not harmless.

Here, the trial court's award of attorney fees as damages is based on its conclusion that defendant breached Addendum C. That breach was among those that plaintiffs alleged as a part of their breach of contract claim. Thus, notwithstanding any breach of the road access guarantee, plaintiffs, not defendant, prevailed on the breach of contract claim because they recovered damages from defendant on the claim. It follows that any error in the court's conclusion that defendant breached the purchase agreement by failing to guarantee access to the road along the south boundary of the property is harmless.

■■ Finally, we turn to defendant's third assignment of error, in which he asserts that "[t]he trial court erred in failing to award contractual attorney fees to defendant as prevailing party on defendant's contract claims." As a result of our decisions on defendant's first two assignments of error, defendant cannot recover attorney fees on the breach of contract claim because he was not the prevailing party on that claim. Insofar as he seeks attorney fees as the prevailing party on plaintiffs' claim for specific performance, and assuming without deciding that he could recover attorney fees for prevailing on that claim, the court did not err in denying an award of attorney fees to defendant because defendant never filed the "signed and detailed statement of the amount of attorney fees" required by ORCP 68 C(4). A trial court does not err by failing to award attorney fees when the party seeking them does not comply with ORCP 68 C(4). *Bond v. Pereira-Giron*, 175 Or App 496, 501, 29 P3d 623 (2001), *rev den*, 333 Or 400 (2002). Here, as in *Magee v. Dyrdahl*, 144 Or App 270, 274, 926 P2d 319 (1996), "[t]he trial court did not err in failing, in effect, to award plaintiffs' attorney fees *sua sponte*."

Affirmed.