Argued and submitted May 14, affirmed August 15, 2001

# STATE OF OREGON,
*Appellant,*

*v.*

# BRENT WAI LAM,
*Respondent.*

## 9905-9670C; A109093

29 P3d 1206

Katherine H. Waldo, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

David Ferry argued the cause for respondent. On the brief was Janet Lee Hoffman.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

BREWER, J.

**BREWER, J.**

The state appeals from a trial court order sustaining defendant's demurrers to the charging instrument in this criminal proceeding. Defendant was charged with interfering with a peace officer, ORS 162.247,[1] and contempt by way of aiding and abetting, ORS 33.015,[2] after he instructed a companion "to not tell" a police officer the location of a probationer suspected of violating probation. The state assigns error to the trial court's conclusions that ORS 162.247 does not prohibit speech and that ORS 33.015 does not contemplate contempt liability for aiding and abetting. We review for errors of law, ORS 138.220; *State v. Charlesworth/Parks*, 151 Or App 100, 104, 951 P2d 153 (1997), *rev den* 327 Or 82 (1998), and affirm.

Defendant was charged by an amended information with:

"COUNT I—[Defendant], on or about May 1, 1999, in Malheur County, State of Oregon, did unlawfully and intentionally attempt to prevent Sergeant Ric Esplin, Ontario Police Department, a person known by said defendant to be a peace officer, from performing his lawful duties

---

[1] ORS 162.247 provides, in part:

"(1) A person commits the crime of interfering with a peace officer if the person, knowing that another person is a peace officer:

"(a) Intentionally acts in a manner that prevents, or attempts to prevent, a peace officer from performing the lawful duties of the peace officer with regards to another person[.]"

[2] ORS 33.015(2) provides:

" 'Contempt of court' means the following acts, done willfully:

"(a) Misconduct in the presence of the court that interferes with a court proceeding or with the administration of justice, or that impairs the respect due the court;

"(b) Disobedience of, resistance to or obstruction of the court's authority, process, orders or judgments;

"(c) Refusal as a witness to appear, be sworn or answer a question contrary to an order of the court;

"(d) Refusal to produce a record, document or other object contrary to an order of the court; or

"(e) Violation of a statutory provision that specifically subjects the person to the contempt power of the court."

with regard to another person, by instructing Kendra Harris to not tell the officer where a probationer had gone, knowing that the probationer had a court order prohibiting the possession and/or consumption of alcohol or his presence in an establishment where alcohol was the primary product of sale, with the intent that the probationer avoid detection.

"COUNT II—Further, based on the same act or transaction alleged in Count I, [defendant,] on or about May 1, 1999, in Malheur County, State of Oregon, did unlawfully and willfully aid and abet [a probationer] in disobeying a court-ordered probation term * * * and attempting to assist [the probationer] in avoiding detection by the Malheur County District Attorney's Office and the Ontario Police Department."

In his demurrer to Count I, defendant argued that speaking is not an "act" as contemplated by ORS 162.247. Alternatively, defendant argued that ORS 162.247 unconstitutionally infringes on defendant's freedom of speech under the First and Fourteenth Amendments to the United States Constitution and Article I, section 8, of the Oregon Constitution. The state responded that the plain language of ORS 162.247 encompasses speaking as an act. The trial court ruled that "ORS 165.085(1) defines an act as a 'bodily movement.' Although the District Attorney has argued creatively that speaking constitutes the movement of lips, I am not finding that speaking is the type of act contemplated by this statute."

In his demurrer to Count II, defendant argued that "aiding and abetting" does not constitute a means of committing contempt under ORS 33.015. The state responded that contempt is an unclassified misdemeanor; that an unclassified misdemeanor is a type of crime; and that the aiding and abetting statute, ORS 161.155(2),[3] applies to a person who

---

[3] ORS 161.155 provides, in part:

"A person is criminally liable for the conduct of another person constituting a crime if:

"(1) The person is made criminally liable by the statute defining the crime; or

"(2) With the intent to promote or facilitate the commission of the crime the person:

"(a) Solicits or commands such other person to commit the crime; or

attempts to aid and abet in the commission of that contempt. On Count II, the trial court ruled:

"I am unwilling to stretch ORS 33.065 to include aiding and abetting of a contempt. That is a narrowly drawn statutory offense that pertains to, and it comes out of, special proceedings listed within chapter 33 of the Oregon Revised Statutes, and I fail to understand how that discrete piece of legislation, which is specifically defined as a six-month sentence and does not refer to any other type of criminal classification, be it as a misdemeanor[,] felony[,] or unclassified misdemeanor, [can] go to the criminal statutes that include aiding and abetting. The contempt is defined explicitly under ORS 33.015(2) to include four specific kinds of actions. There is no reference to aiding and abetting. And as I say, I am unable to connect the discrete chapter to the criminal code chapters beginning in ORS chapter 161 and as follows there. So I am allowing the demurrer to Count [II]."

This appeal followed.

■    In its first assignment of error, the state argues that the trial court erred in concluding that ORS 162.247 excludes acts that are entirely verbal. The state argues that, because the context does not require otherwise, an "act" is defined as "a bodily movement." ORS 161.085.[4] The state relies on *State v. Jessen*, 162 Or App 662, 986 P2d 684 (1999), *rev den* 329 Or 589 (2000), for the proposition that speaking requires a bodily movement, even if limited only to movement of the tongue and lips. The state argues that, because "bodily movement" in its plain and ordinary meaning includes speaking, speaking alone may violate ORS 162.247. Defendant responds with three arguments: (1) the text and context of ORS 162.247

---

"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime[.]"

[4] ORS 161.085 provides, in part:

"As used in chapter 743, Oregon Laws 1971, and ORS 166.635, unless the context requires otherwise:

"(1) 'Act' means a bodily movement.

"* * * * *

"(4) 'Conduct' means an act or omission and its accompanying mental state.

"(5) 'To act' means either to perform an act or to omit to perform an act."

reveal that the legislature did not intend to prohibit speech; (2) if the text and context are ambiguous about legislative intent, legislative history reinforces an interpretation that does not include speech; and (3) if ORS 162.247 does include speech, it is unconstitutionally overbroad.

■ We review a trial court's ruling on a demurrer challenging the validity of a charging instrument for errors of law. ORS 138.220; *Charlesworth / Parks*, 151 Or App at 104. Whether ORS 162.247 prohibits speech is a question of statutory construction. In interpreting a statute, the court's task is to discern the intent of the legislature. ORS 174.020; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). The best evidence of legislative intent is the text and context of the statute. *Id.* at 610-11. ORS 162.247 does not specifically define the verb "to act," so we use the definitions provided in ORS 161.085 to determine the term's meaning. *See* ORS 161.035(2). In combination, ORS 161.085(1) and (5) define "to act" as "to perform or fail to perform a bodily movement."

■ The context of the term includes prior judicial opinions interpreting the same or similar language. *Magee v. Dyrdahl*, 144 Or App 270, 275, 926 P2d 319 (1996). As the state notes, in *Jessen*, we construed the meaning of "act" in ORS 161.085. There, the defendant was charged with three counts of attempted second-degree rape after making three attempts to persuade his 13-year-old adopted daughter to have sex with him. The trial court denied two motions for a judgment of acquittal on all counts, and the defendant was convicted. On appeal, the defendant made two arguments. First, he argued that his verbal enticements to his daughter were not "conduct" within the meaning of ORS 161.405, which describes the inchoate crime of attempt. Second, he argued that even if speech could be characterized as *conduct*, it did not constitute a *substantial step* toward commission of the crime.[5]

---

[5] ORS 161.405(1) provides that "[a] person is guilty of an attempt to commit a crime when the person intentionally engages in *conduct* which constitutes *a substantial step* toward commission of the crime." (Emphasis added.)

With regard to the defendant's first argument, we noted that ORS 161.085 defined "conduct" as "an act or omission and its accompanying state of mind," and an "act" as "bodily movement." *Jessen*, 162 Or App at 667. We concluded that speaking fell within the definition of bodily movement:

> " 'Bodily' means 'of or relating to the body.' 'Movement' means 'the action or process of moving.' Thus, the ordinary and plain meaning of the phrase 'bodily movement' means the action or process of moving a body part. [The d]efendant argues that bodily movement requires something more than moving the mouth and aspirating air over vocal cords. However, the act of speaking necessarily includes moving those and other body parts, including the tongue. Nothing in the text or context of ORS 161.405 suggests that the legislature intended to exclude such bodily movements from the statutory definition of conduct." *Id.* (citations omitted).

We also rejected the defendant's argument about the statutory phrase limiting the definition of "conduct" to that "which constitutes a substantial step toward the commission of a crime." The defendant argued that his speech did not advance his criminal purpose and, thus, could not constitute a substantial step. We disagreed in light of prior case law establishing that verbal enticement constitutes a substantial step as a matter of law. *Id.* at 668-69.

At first blush, *Jessen* appears to support the state's proposed construction of the statute. However, ORS 162.247 limits the verb "acts" with an adverbial phrase "*in a manner that prevents, or attempts to prevent,* a peace officer from performing [his or her] lawful duties." Unlike the limiting phrase at issue in *Jessen*, the meaning of the limiting phrase in ORS 162.247 poses an issue of first impression. The Oregon Revised Statutes do not define "prevent." Its common meaning is "to hold or keep back (one about to act)." *Webster's Third New Int'l Dictionary*, 1798 (unabridged ed 1993) (noting that this usage often occurs with "from"). In one sense, "prevent" "implies an insurmountable obstacle or impediment." *Id.* This definition carries a connotation of physical conduct, because speech does not insurmountably keep or hold a person back in any literal sense. However, prevent also is synonymous with forestall, which means "to intercept or stop something in its course." *Id.* Speech alone arguably

could hold back a peace officer by inducing the officer to stop performing his or her duties. Because there are two plausible interpretations of the scope of the phrase "acts in a manner that prevents or attempts to prevent," it is ambiguous. *See State ex rel OHSU v. Haas*, 325 Or 492, 503, 942 P2d 261 (1997) (concluding that the scope of the term "employee" in OEC 503(1)(d) was ambiguous); *State ex rel Juv. Dept. v. Saechao*, 167 Or App 227, 231, 2 P3d 935, *rev den* 331 Or 283 (2000) (concluding that the scope of the phrase "participating with" in ORS 166.015 was ambiguous). We turn, therefore, to the legislative history of the statute. *State ex rel Turner v. Frankel*, 322 Or 363, 374, 908 P2d 293 (1995); *PGE*, 317 Or at 310-11.

ORS 162.247 was enacted in 1997 as Senate Bill 423 (SB 423). Representative Prozanski drafted the bill based on a similar municipal ordinance in Eugene. Prozanski testified before the Senate Committee on Crime and Corrections about the problem to which the bill was directed:

> "It's another tool, a mechanism to deal with the situation where you have an officer who is involved in something less than performing [an] arrest, but [the officer is] forced to divert [his or her] attention from what could be a very serious threat [to] that officer or anyone else to deal with somebody that is really out of line * * *." Tape recording, Senate Committee on Crime and Corrections, SB 423, Feb. 19, 1997, Tape 13, Side A (testimony of Representative Floyd Prozanski).

Ingrid Swenson of the Oregon Criminal Defense Lawyers Association testified in opposition to the bill. She submitted as an exhibit a copy of *City of Portland v. Anderson*, 40 Or App 779, 596 P2d 603 (1979), in support of the contention that SB 423 might be unconstitutional as written. In *Anderson*, we held unconstitutional an ordinance that prohibited interference with a peace officer:

> "[T]he ordinance does not specify whether the 'interference' must be by physical contact, or whether it may be by words or gestures.
>
> "Under the ordinance, to give but one example, one who calls to an officer directing traffic, thereby diverting his attention, could be in violation. The fact that a prosecutor, a

judge or a jury might use common sense in not prosecuting, dismissing the complaint or acquitting the defendant does not resolve the problem." *Id.* at 782-83.

Because the ordinance did not adequately distinguish between constitutionally protected conduct and prohibited conduct, we found it to be unconstitutionally vague. *Id.* at 783. Swenson explained to the committee her reasons for submitting the opinion as an exhibit:

> "[In *Anderson*, the Portland ordinance] was struck down by the court because it reached far enough it didn't touch just conduct. It touched speech and prohibited what the court felt could be protected speech." Tape recording, Senate Committee on Crime and Corrections, SB 423, Feb. 19, 1997, Tape 13, Side A (testimony of Ingrid Swenson).

Prozanski then returned to offer clarification of his testimony:

> "*I want to make clear that the intent, my intent, is not to limit speech. It's to deal with the physical contact, or I should say, conduct of an individual,* and I would ask your counsel maybe to assist you all when you go through your deliberations. * * * I have no objection to see the proper words are put in place to make certain that we are not attempting to prohibit free speech. That is not the intent of myself, and on behalf I would be able to speak, I think, for the city of Eugene, their intent either. *It's basically where there's some type of conduct that is causing the officer to do something, as compared to words that are spoken by an individual.*" (Emphasis added.)

Neither other witnesses nor other legislators addressed the issue again on the record, and the bill passed as Oregon Laws 1997, chapter 719, section 1. In light of the unequivocal and uncontroverted statement of intent by the drafter of ORS 162.247, we conclude that the statute was not intended to reach speech alone. The trial court correctly so held, and it did not err by granting defendant's demurrer to Count I.

■■ In its second assignment of error, the state argues that the trial court erred by granting defendant's demurrer to the charge of aiding and abetting a contempt. ORS 161.155 describes the situations in which accomplice liability can attach:

"A person is criminally liable for *the conduct of another person constituting a crime* if:

"* * * * *

"(2)   With the intent to promote or facilitate the commission of the crime the person:

"* * * * *

"(b)   Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime[.]" (Emphasis added.)

Thus, in the context of an aiding and abetting charge, ORS 161.155 provides for accomplice liability only where the accused has aided or abetted the commission of a crime. In *Bachman v. Bachman*, 171 Or App 665, 16 P3d 1185 (2000), *rev den* 332 Or 305 (2001), decided after the briefing in this case, we held that contempt is "neither civil nor criminal. Instead, it is a unique and inherent power of a court to ensure compliance with its orders." *Id.* at 672. Because contempt is not a crime, defendant cannot be criminally liable for aiding and abetting a contempt, as charged by the information. Accordingly, the trial court did not err in granting defendant's demurrer to Count II.

Affirmed.