Argued and submitted September 27, 2010, judgment on claim for false arrest reversed and remanded; otherwise affirmed February 8, 2012

Katherine DeNUCCI,
*Plaintiff-Appellant,*

*v.*

J. HENNINGSEN
and Washington County,
a municipal corporation,
*Defendants-Respondents,*

*and*

John M. ELLIOTT,
dba Elliott Law Offices,
*Defendant.*

Washington County Circuit Court
C071949CV; A142059

273 P3d 148

Carl G. Kiss argued the cause and filed the briefs for appellant.

William G. Blair, Senior Assistant County Counsel, argued the cause for respondents. With him on the briefs

were Dan Olsen, County Counsel, and Office of County Counsel.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

DUNCAN, J.

## DUNCAN, J.

Plaintiff brought a civil action against Washington County Deputy Sheriff Henningsen and Washington County, asserting that Henningsen had arrested her without probable cause. Plaintiff's claim against defendant Henningsen, brought pursuant to 42 USC section 1983, was that he violated her Fourth Amendment right to be free from unreasonable seizures. Plaintiff's claim against defendant Washington County was for the tort of false arrest.

A jury returned a verdict in favor of defendants. Plaintiff appeals, assigning error to the trial court's grant of defendants' motion *in limine* and instruction of the jury. Defendant Henningsen cross-assigns error to the trial court's denial of his motion for directed verdict on plaintiff's section 1983 claim, and defendant Washington County cross-assigns error to the trial court's denial of its motion to dismiss and motion for directed verdict on plaintiff's false arrest claim. As explained below, we address defendants' cross-assignments of error first, and we conclude that the trial court erred in denying defendant Henningsen's motion for directed verdict on plaintiff's section 1983 claim but that the trial court did not err in denying defendant Washington County's motion to dismiss and motion for directed verdict on plaintiff's false arrest claim. As to plaintiff's assignments of error, we conclude that the trial court erred in instructing the jury, and, because we remand based on that error, we do not reach plaintiff's assignment of error regarding the trial court's grant of defendants' motion *in limine*. Accordingly, we reverse and remand plaintiff's false arrest claim against defendant Washington County and otherwise affirm.

We begin with the facts, which we state in the light most favorable to plaintiff.[1] On May 14, 2005, a car struck a young boy on a bicycle in plaintiff's neighborhood. Plaintiff,

---

[1] As discussed below, 248 Or App at 64, 65-66 n 6, we review defendants' cross-assignments of error first and, in reviewing them, view the evidence in the light most favorable to the nonmoving party, plaintiff. Our review of plaintiff's assignments of error regarding jury instructions, insofar as it involves the historical facts, requires the same standard: We "review[ ] the evidence in the light most favorable to the establishment of the facts necessary to require giving the requested instruction." *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 101 n 1, 957 P2d 147 (1998). Thus, we state the facts in the light most favorable to plaintiff.

who has medical training and experience with trauma patients, was the first person to arrive at the scene of the accident. She evaluated the boy's condition and assisted him until emergency medical technicians (EMTs) arrived.

When the EMTs arrived, plaintiff spoke with one of them, Lieutenant Bach. She told Bach what she had observed of the accident and the boy's condition. Then she backed away to allow the EMTs to assist the boy. Around that time, the boy's father sped to the scene in a van, almost hitting two of plaintiff's children who were standing nearby.

When the father got out of the van, plaintiff and other neighbors who had gathered yelled at him, telling him to slow down. Plaintiff then headed back toward Bach in order to tell him that the father had arrived. While plaintiff was walking toward Bach, the father yelled at her and she yelled back at him that he did not need to yell and that his son would be alright. At some point during that exchange, the father called plaintiff a bitch. When plaintiff reached Bach, who was within five to nine feet of the boy, she told him that the boy's father had arrived and asked if Bach needed anything else from her. The father, who had also approached Bach, asked plaintiff what Bach wanted him to do, and Bach said that the father should step back. Then he told plaintiff that she should step back.

Defendant Henningsen, who had just arrived at the scene, immediately repeated Bach's request for plaintiff to step back. Plaintiff complied, backing toward the side of the road. As she backed up, she said to Henningsen, "The dad doesn't have to be such an ass. I was trying to help his son."

After that exchange, plaintiff stood at the side of the road talking with her children and several neighbors for a few minutes. Henningsen had turned to face the other direction and was five or 10 feet from plaintiff. Plaintiff believed that she recognized Henningsen and asked his name. Henningsen turned and said, "What?" Plaintiff, who is four feet 10 inches tall, took one step toward him and repeated her question in a louder voice. Henningsen said, "That's it," and arrested plaintiff. He handcuffed her and put her in his police car, where she remained for between 30 and 45 minutes. When plaintiff asked why she was being arrested, Henningsen

said, "You know why." Plaintiff sustained a shoulder injury during the arrest.

Plaintiff was released with a citation in lieu of arrest. The citation, issued by Henningsen, was for violating ORS 162.257, interfering with a firefighter or an emergency medical services provider.[2] The district attorney later amended the charging instrument to include a charge of violating ORS 162.247, interfering with a peace officer. On September 29, 2005, the charges against plaintiff were dismissed on the district attorney's motion.

On March 24, 2006, plaintiff provided a notice of claim under the Oregon Tort Claims Act (OTCA) to Washington County. Then she filed this civil action against defendant Henningsen for violation of her Fourth Amendment right to be free from unreasonable seizures and defendant Washington County for false arrest.[3]

Defendant Washington County moved to dismiss plaintiff's false arrest claim on the ground that plaintiff had failed to give timely notice of claim under the OTCA, which requires plaintiffs to give notice of tort claims against public bodies "within 180 days after the alleged loss or injury." ORS 30.275(2)(b). The county argued that, although plaintiff gave notice within 180 days of the day that the charges against her were dismissed, that was insufficient; according to the county, plaintiff had to give notice within 180 days of the day of her arrest. The trial court denied the county's motion.

Defendants moved *in limine* to exclude evidence that the district attorney had moved to dismiss the charges against plaintiff. The trial court granted defendants' motion, over plaintiff's objection, and the case proceeded to trial.

[2] When Henningsen arrested plaintiff, the statute used the term "emergency medical technician" where "emergency medical services provider" appears in the current version. ORS 162.257 (2005). The legislature amended the statute in 2011. Or Laws 2011, ch 703, § 26. An EMT is an emergency medical services provider. ORS 682.025(4). As a result, the amendment is not relevant to the issues before us. Thus, throughout this opinion we refer to the current version of the statute.

[3] Plaintiff initially alleged a section 1983 claim against defendant Washington County as well but voluntarily dismissed it. Plaintiff also alleged a claim against John Elliott, the attorney who represented plaintiff during the criminal proceedings. Elliott filed a motion for summary judgment, which the trial court granted. That decision is not at issue on appeal.

Defendant Henningsen raised a qualified immunity defense, asserting that even if no probable cause existed for his arrest of plaintiff for interfering with an emergency medical services provider, ORS 162.257, the scope of ORS 162.257 was not clearly established, so he was entitled to qualified immunity.

At the close of evidence, defendant Washington County moved for a directed verdict on plaintiff's false arrest claim, again asserting that plaintiff had failed to give timely notice of her tort claim. Defendant Henningsen moved for a directed verdict on plaintiff's section 1983 claim based on his qualified immunity defense. The trial court denied both defendants' directed verdict motions.

In instructing the jury on the issue of whether there was probable cause for Henningsen to arrest plaintiff, the court paraphrased the text of ORS 162.257, which defines the crime of interfering with an emergency medical services provider, and declined to give any additional instruction, including an instruction that plaintiff had submitted, in order to clarify the words of the statute. The case went to the jury, and the jury found for defendants.

On appeal, plaintiff assigns error to the trial court's grant of defendants' motion *in limine* excluding evidence that the district attorney moved to dismiss the charges against her and to the trial court's jury instructions regarding the elements of the crime of interfering with an emergency medical services provider. Defendant Washington County cross-assigns error to the trial court's denial of its motion to dismiss and motion for directed verdict based on its claim that plaintiff's tort claim notice was untimely. Defendant Henningsen cross-assigns error to the trial court's denial of his motion for directed verdict based on his qualified immunity defense.

## I. DEFENDANTS' CROSS-ASSIGNMENTS OF ERROR

We consider defendants cross-assignments of error first because, if correct, they obviate the need to remand for a new trial.[4] Defendants cross-assign error to the trial court's

---

[4] If defendants' cross-assignments are correct, then the trial court should have granted their motions for directed verdict, so there is no need to decide plaintiff's assignments of error, which relate to jury instructions and defendants' motion

denial of (1) Washington County's motion to dismiss the false arrest claim, (2) Washington County's motion for directed verdict on the false arrest claim, and (3) Henningsen's motion for directed verdict on the section 1983 claim. We address the first two cross-assignments, regarding the false arrest claim, together,[5] and then turn to the third cross-assignment, regarding the section 1983 claim.

A.  *Washington County's Motion to Dismiss and Motion for Directed Verdict*

   After a trial, we review the denial of a motion to dismiss under the same standard that we use for the denial of a directed verdict. *Faverty v. McDonald's Restaurants*, 133 Or App 514, 521, 892 P2d 703 (1995), *rev dismissed*, 326 Or 530 (1998). That is, "we view the evidence, including reasonable attendant inferences, in the light most favorable to the nonmoving party." *Hudjohn v. S&G Machinery Co.*, 200 Or App 340, 342, 114 P3d 1141 (2005).[6] Consequently, we review to

---

*in limine* to exclude evidence. We note that, if the evidence at issue in the motion *in limine* were material to the grounds for defendants' motions for directed verdict, then we would have to consider the motion *in limine* before considering the propriety of the motions for directed verdict in order to establish the appropriate evidentiary record for review of the motions for directed verdict. *See Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984) (on review of motion for directed verdict, the court considers the evidence properly before the trial court to determine whether it entitled one party to judgment as a matter of law). Here, however, the excluded evidence, regarding the district attorney's dismissal of the charges against plaintiff, is not material to our analysis of defendants' cross-assignments. Therefore, we review defendants' cross-assignments first.

   [5] Washington County makes one independent argument regarding the motion to dismiss; otherwise, its arguments regarding the motion to dismiss are the same as its arguments regarding the motion for directed verdict.

   In the third claim of her complaint, which alleged negligence by Elliott, her defense attorney, plaintiff alleged that her notice of claim was not timely filed as a result of Elliott's negligence. The county argues that that allegation establishes that the notice was not filed within the 180-day period and, consequently, that the motion to dismiss should have been granted. However, for the purpose of a motion to dismiss, "each claim in a pleading stands alone and must be tested separately," regardless of whether the facts it alleges are inconsistent with facts alleged in another claim. *See Dotson v. Smith*, 307 Or 132, 137, 764 P2d 540 (1988) (so holding with regard to a motion to dismiss on statute of limitations grounds). Therefore, plaintiff's allegation against Elliott does not support the county's motion to dismiss the claim against it.

   [6] Defendants argue that we should review the evidence in the light most favorable to them because they obtained a favorable verdict below. Defendants are correct that, in many cases, we state that we review the facts in the light most favorable to the party who obtained a favorable verdict. *See, e.g., Brown*, 297 Or at 705. However, in all those cases, the party who obtained a favorable verdict is also the

determine whether defendants were entitled to judgment as a matter of law, *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984), viewing the evidence in the light most favorable to plaintiff.

Plaintiff's false arrest claim is a common-law tort claim, and, thus, it is governed by the OTCA because defendant Washington County is a "public body." ORS 30.260(4)(a); ORS 30.265(1); ORS 174.109. The OTCA requires that, before filing suit against a public body, a plaintiff must give notice of the claim "within 180 days after the alleged loss or injury." ORS 30.275(2)(b). Failure to give timely notice of claim is fatal to a plaintiff's tort claim against a public body. *See* ORS 30.275(1).

Defendant Washington County asserts that plaintiff did not provide notice of her claim within the required time period. The parties agree that plaintiff was arrested on May 14, 2005, the charges were dismissed on September 29, 2005, and plaintiff gave the county notice of her claim on March 24, 2006. Thus, plaintiff gave notice 313 days after her arrest and 176 days after the charges against her were dismissed.

Washington County argues that, in light of the fact that plaintiff did not provide a notice of claim within 180 days of her arrest, the trial court erred in denying the county's motion to dismiss and, later, its motion for directed verdict, on the false arrest claim. Plaintiff counters that the discovery rule applies to the 180-day window for filing a notice of claim and that she reasonably did not discover everything that she needed to know to start the clock running until less than 180 days before she filed her notice of claim.

---

nonmoving party because, in the appellate posture that is by far more common, the party against whom the jury found is the one who appeals, asserting that the trial court erred in denying its motion for directed verdict. *See, e.g., id.* at 700. In this case, however, the parties who prevailed on the verdict (defendants) assert the trial court's failure to grant their motions as a reason that the judgment should not be disturbed. Where the party who received a favorable verdict is not the nonmoving party, we review the facts in the light most favorable to the nonmoving party. *See Hudjohn*, 200 Or App at 342.

Furthermore, here, we conclude that plaintiff's arguments show that the verdict was invalid because of instructional error that requires reversal. 248 Or App at 81. Consequently, to review the facts for purposes of defendants' cross-assignments based on that verdict would be to rely on an invalid verdict to determine the outcome of the appeal.

For the reasons that follow, we conclude that questions of fact precluded the court from deciding the issue as a matter of law.[7] Therefore, the trial court did not err in denying the county's motion to dismiss or its motion for directed verdict.

The county argues that plaintiff's "alleged loss or injury," ORS 30.275(2)(b), took place on May 14, 2005, when she was arrested, and that she knew of all of the elements of her claim on that day. The elements of false arrest are: "(1) defendant must confine plaintiff; (2) defendant must intend the act that causes the confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful." *Hiber v. Creditors Collection Service*, 154 Or App 408, 413, 961 P2d 898, *rev den*, 327 Or 621 (1998).

The county argues primarily that plaintiff has confused the tort of false imprisonment, which does not require proof that charges against the plaintiff have been dropped, with the tort of malicious prosecution, which does require such proof. If plaintiff had claimed malicious prosecution, the county contends, her notice of claim would have been timely because she provided notice of her claim within 180 days of the date when the charges against her were dropped. However, where, as here, all of the elements of the tort occurred on the day of plaintiff's arrest, the county argues that the 180-day period begins to run immediately. Plaintiff responds that the discovery rule applies to OTCA notices of claim and that she did not know of and a reasonable person would not have known of an injury to her legally protected interests—namely, the fact that the arrest was false—until the charges were dismissed.[8]

---

[7] Defendant does not argue that plaintiff's evidence was insufficient to carry her burden of proving that she did not know, and a reasonable person would not have known, of the unlawfulness of her arrest more than 180 days before she filed a notice of claim. Rather, defendant contends that, as a matter of law, the 180-day period ended 180 days after the arrest. Accordingly, we do not evaluate the sufficiency of plaintiff's evidence on the issue.

[8] The first half of that argument—that the discovery rule applies—is discussed below. The second half—that a reasonable person would not have discovered the injury until the charges were dismissed—effectively requests a decision to that effect as a matter of law. But plaintiff has not requested, from the trial court or from this court, any relief that would result from that conclusion, *e.g.*, a peremptory instruction on that issue. We therefore determine only that the issue should go to the jury, not that plaintiff is entitled to judgment as a matter of law.

Plaintiff is correct that the discovery rule applies to OTCA notices of claim. *See Adams v. Oregon State Police*, 289 Or 233, 239, 611 P2d 1153 (1980); *Dowers Farms v. Lake County*, 288 Or 669, 681, 607 P2d 1361 (1980). Under that rule, "the * * * notice period and two-year statute of limitations applicable [to an OTCA claim] do not begin to run until a plaintiff knows or reasonably should know of the facts giving rise to his claim." *Doe v. Lake Oswego School District*, 242 Or App 605, 613, 259 P3d 27, *rev den*, 351 Or 254 (2011).

We have elaborated on the meaning of the phrase "the facts giving rise to his claim" as follows:

> "The 180-day period does not begin to run until the plaintiff knows or, in the exercise of reasonable care should know, facts that would make an objectively reasonable person aware of a substantial possibility that all three of the following elements exist: an injury occurred, the injury harmed one or more of the plaintiff's legally protected interests, and the defendant is the responsible party."

*Benson v. State of Oregon*, 196 Or App 211, 215, 100 P3d 1077 (2004). The question of what a plaintiff should have known, and when, is ordinarily a question for the jury. *See, e.g., Johnson v. Mult. Co. Dept. Community Justice*, 344 Or 111, 118-23, 178 P3d 210 (2008) ("The fact that news about some event was *available* at a particular time does not, by itself, resolve whether a reasonable person would have read or heard that news, much less what a reasonable inquiry based on that news would have uncovered." (Emphasis in original.)); *Benson*, 196 Or App at 220 (concluding that directed verdict on statute of limitations issue was not appropriate because the contents of a police report of which the plaintiff had a copy "suffice[d] to create an issue of fact regarding what a reasonably prudent person might infer from the report").

---

For the same reason, we do not address plaintiff's argument based on *Stevens v. Bispham*, 316 Or 221, 851 P2d 556 (1993). In that case, the Supreme Court determined that a convicted criminal defendant could not file a professional negligence action against his defense attorney unless he had been exonerated. The result was that, as a matter of law, the statute of limitations on the professional negligence action did not begin to run until the plaintiff was exonerated. Here, again, plaintiff has not requested a determination that her notice of claim was timely as a matter of law, so we do not address her argument that this situation is analogous to the situation in *Stevens*.

On the day of her arrest, plaintiff plainly knew that she had been arrested. However, that fact alone was not enough to commence the 180-day period. The facts must alert a plaintiff or a reasonable person that three elements exist: "an injury occurred, *the injury harmed one or more of the plaintiff's legally protected interests*, and the defendant is the responsible party." *Benson*, 196 Or App at 215 (emphasis added). That is, plaintiff had to know, or have had a duty to learn, facts that would make an objectively reasonable person aware of a substantial possibility that her arrest harmed a legally protected interest.

If Henningsen had had probable cause to arrest plaintiff, the arrest would not have harmed any legally protected interest that she had. *See, e.g.*, *Picray v. Sealock*, 138 F3d 767, 770 (9th Cir 1998). Therefore, the 180-day period did not start until plaintiff knew, or in the exercise of reasonable care should have known, facts that would alert a reasonable person to a substantial possibility that her arrest was unlawful.

Defendant offers, and we perceive, no reason to conclude that a reasonable person would have known that her arrest was unlawful on the day when it took place.[9] Under these circumstances, we cannot say, as a matter of law, that plaintiff had a duty to investigate the legality of her arrest immediately after she was arrested; nor can we say, if she had such a duty, when an investigation would have yielded facts that would have alerted a reasonable person to a substantial possibility that the arrest was unlawful. Therefore,

---

[9] That conclusion is in accord with the application of the discovery rule in other contexts. For example, in the context of medical malpractice, the Supreme Court has held that the statute of limitations for the claim of a plaintiff who is injured during surgery does not begin to run until the plaintiff has had an opportunity to discover that his or her injury is not an ordinary result or an ordinary complication of the surgery. *Gaston v. Parsons*, 318 Or 247, 256-58, 864 P2d 1319 (1994) ("Plaintiff's symptoms were not so clearly unrelated to the procedure performed that as a matter of law a reasonable person would believe that the cause was tortious conduct."). In other words, we do not impute to the patient knowledge of the doctor's negligence immediately upon the patient's realization that he or she suffers some pain or incapacity that might be attributable to the surgery, properly performed. Similarly, here we do not impute to an arrestee knowledge that she was arrested without probable cause merely because she suffered the indignity of an arrest. Instead, under those circumstances, the jury must determine when she knew or should have known of a substantial possibility that her arrest was unlawful.

the question of when plaintiff knew or should have known facts indicating that her arrest was unlawful must be answered by a jury. The trial court did not err in denying the county's motion to dismiss or its motion for directed verdict.

## B. *Henningsen's Motion for Directed Verdict*

We now turn to defendants' third cross-assignment of error. Defendant Henningsen argues that the trial court erred in denying his motion for directed verdict on plaintiff's section 1983 claim because he is entitled to the defense of qualified immunity as a matter of law.

"Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights."[10] *Conn v. Gabbert*, 526 US 286, 290, 119 S Ct 1292, 143 L Ed 2d 399 (1999). Here, plaintiff argues that Henningsen violated her Fourth Amendment right to be free from unreasonable seizures by arresting her without probable cause to believe that she had committed or was about to commit a crime.[11] *See Picray*, 138 F3d at 770 ("[The plaintiff's] warrantless arrest does not violate the Fourth Amendment if the officers had probable cause to believe he had committed or was about to commit a crime.").

In response, Henningsen asserts the defense of qualified immunity, which entitles a government actor performing discretionary functions to immunity from suit unless a plaintiff demonstrates that the actor violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 US 800, 818, 102 S Ct 2727, 73 L Ed 2d 396 (1982). In other

---

[10] 42 USC section 1983 provides, in relevant part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * *, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"

[11] The Fourth Amendment to the United States Constitution provides, in relevant part:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"

words, "the defense of qualified immunity is lost if two elements are present: (1) a violation of a constitutional right; and (2) that the right violated, at the time of the violation, was clearly established." *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 656, 20 P3d 180 (2001).[12] The qualified immunity defense is a matter of law to be decided by the court. If, however, the availability of the defense depends on facts that are in dispute, the jury must determine the facts. *Act Up!/Portland v. Bagley*, 988 F2d 868, 873 (9th Cir 1993).

As explained below, we conclude that Henningsen was entitled to prevail on his motion for directed verdict based on his defense of qualified immunity. We so conclude because, although Henningsen did not have probable cause to arrest plaintiff, he reasonably could have believed that he did. *See Harlow*, 457 US at 818 (qualified immunity defense protects government actors "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").[13]

Henningsen argues that he had probable cause to arrest plaintiff under ORS 162.257, which prohibits a person from "intentionally act[ing] in a manner that prevents, or attempts to prevent, a firefighter or emergency medical services provider from performing the lawful duties of the firefighter or emergency medical services provider." Plaintiff

---

[12] Over the years, there has been a significant amount of debate about which of the two prongs of the defense must be addressed first. The Supreme Court mandated that the existence of the violation must be addressed first in *Saucier v. Katz*, 533 US 194, 121 S Ct 2151, 150 L Ed 2d 272 (2001). It then overruled that case and allowed for a more flexible approach in *Pearson v. Callahan*, 555 US 223, 129 S Ct 808, 172 L Ed 2d 565 (2009). However, the " 'better approach' " is to decide first whether the plaintiff's rights have been violated and then to determine whether the law was clearly established, and that is the approach that we take. *Outdoor Media Dimensions*, 331 Or at 656 (quoting *County of Sacramento v. Lewis*, 523 US 833, 841 n 5, 118 S Ct 1708, 140 L Ed 2d 1043 (1998)).

[13] We note that one of the prongs of the qualified immunity defense, the existence of probable cause to arrest, is also one of the disputed issues with regard to the false arrest claim, and one that may depend on the factfinder's determination of the disputed facts. Our determination that there was not probable cause is predicated on our standard of review—namely, our view of the facts in the light most favorable to the plaintiff. Consequently, although we make a determination regarding probable cause as part of our analysis, our determination does not obviate the need, on remand of the false arrest claim, for a jury to determine what actually occurred.

responds that Henningsen lacked probable cause to arrest her because speech alone cannot violate ORS 162.257 and the only behavior by plaintiff that Henningsen could have relied on to justify the arrest was speech. Plaintiff argues that she was arrested for yelling at the father and for asking for Henningsen's name and that neither of those acts violates ORS 162.257. Plaintiff is correct that Henningsen lacked probable cause for the arrest.

To support her argument, plaintiff relies on our decision in *State v. Lam*, 176 Or App 149, 29 P3d 1206 (2001). In *Lam*, the defendant was charged with interfering with a peace officer, ORS 162.247 (2001), *amended by* Or Laws 2005, ch 668, § 1. At the time, that statute provided, in part:

"(1)   A person commits the crime of interfering with a peace officer if the person, knowing that another person is a peace officer:

"(a)   Intentionally acts in a manner that prevents, or attempts to prevent, a peace officer from performing the lawful duties of the peace officer with regard to another person[.]"[14]

The defendant in *Lam* had instructed another person "not to tell [an] officer where a probationer had gone" when the officer asked where the probationer was in connection with an investigation. 176 Or App at 152. The defendant argued that speaking did not constitute an "act" as contemplated by the statute. The trial court agreed and granted the defendant's demurrer.

On the state's appeal, we analyzed ORS 162.247 under the rubric of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We disagreed with the defendant's reasoning but concluded that the language used in the statute—modification of the verb "acts" with the adverbial phrase "*in a manner that prevents, or attempts to prevent, a peace officer from performing* [his or her] *lawful duties*" (emphasis added)—was ambiguous:

---

[14] ORS 162.247 was amended in 2005. Or Laws 2005, ch 668, § 1. The language that we interpreted in *Lam* remains the same, but the amended version prohibits interfering with a peace officer or a parole and probation officer. ORS 162.247. Throughout our discussion, we refer to the 2001 version of ORS 162.247.

"The Oregon Revised Statutes do not define 'prevent.' Its common meaning is 'to hold or keep back (one about to act).' *Webster's Third New Int'l Dictionary*, 1798 (unabridged ed 1993) (noting that this usage often occurs with 'from'). In one sense, 'prevent' 'implies an insurmountable obstacle or impediment.' *Id.* This definition carries a connotation of physical conduct, because speech does not insurmountably keep or hold a person back in any literal sense. However, prevent also is synonymous with forestall, which means 'to intercept or stop something in its course.' *Id.* Speech alone arguably could hold back a police officer by inducing the officer to stop performing his or her duties. Because there are two plausible interpretations of the scope of the phrase ·'acts in a manner that prevents or attempts to prevent,' it is ambiguous."

*Lam*, 176 Or App at 155-56. We therefore turned to the legislative history of ORS 162.247 for guidance as to what the legislature intended.

ORS 162.247 was enacted in 1997 as Senate Bill 423 (SB 423). Or Laws 1997, ch 719, § 1. Ingrid Swenson of the Oregon Criminal Defense Lawyers Association testified in opposition to the bill. She submitted a copy of our decision in *City of Portland v. Anderson*, 40 Or App 779, 596 P2d 603 (1979), to support her contention that SB 423 might be unconstitutional as written. As we explained in *Lam*,

"In *Anderson*, we held unconstitutional an ordinance that prohibited interference with a peace officer:

" '[T]he ordinance does not specify whether the "interference" must be by physical contact, or whether it may be by words or gestures.

" 'Under the ordinance, to give but one example, one who calls to an officer directing traffic, thereby diverting his attention, could be in violation. The fact that a prosecutor, a judge or a jury might use common sense in not prosecuting, dismissing the complaint or acquitting the defendant does not resolve the problem.' [*Anderson*, 40 Or App] at 782-83.

"Because the ordinance did not adequately distinguish between constitutionally protected conduct and prohibited conduct, we found it to be unconstitutionally vague. *Id.* at 783."

*Lam,* 176 Or App at 156-57. In response to Swenson's concern and our holding in *Anderson,* the author of the bill, Representative Floyd Prozanski, returned to testify about his intention when drafting SB 423:

> " *'I want to make clear that the intent, my intent, is not to limit speech. It's to deal with the physical contact, or I should say, conduct of an individual,* and I would ask your counsel maybe to assist you all when you go through your deliberations. * * * I have no objection to see the proper words are put in place to make certain that we are not attempting to prohibit free speech. That is not the intent of myself * * *. *It's basically where there's some type of conduct that is causing the officer to do something, as compared to words that are spoken by an individual.' "*

*Id.* at 157 (emphasis and first omission in *Lam*). Based on that understanding, that the intent of the drafter was to limit only physical conduct, we concluded that the language used in ORS 162.247—"intentionally acts in a manner that prevents, or attempts to prevent"—"was not intended to reach speech alone." *Id.*

The legislature passed ORS 162.257, the statute at issue in this case, two years after our decision in *Lam.* Or Laws 2003, ch 529, § 2. The statute provides, in part:

> "A person commits the crime of interfering with a firefighter or emergency medical services provider if the person, knowing that another person is a firefighter or emergency medical services provider, *intentionally acts in a manner that prevents, or attempts to prevent,* a firefighter or emergency medical services provider from performing the lawful duties of the firefighter or emergency medical services provider."

ORS 162.257(1) (emphasis added).

Plaintiff correctly asserts that we assume that the legislature enacts statutes in light of existing judicial decisions that are relevant to those statutes. *Mastriano v. Board of Parole,* 342 Or 684, 693, 159 P3d 1151 (2007); *Joshi v. Providence Health System,* 342 Or 152, 158, 149 P3d 1164 (2006). It follows that the legislature intended the phrase "intentionally acts in a manner that prevents, or attempts to prevent" in ORS 162.257 to mean the same thing that we

ascertained it to mean in ORS 162.247. As a result, ORS 162.257 does not prohibit "interference" with a firefighter or an emergency medical services provider through speech alone; physical conduct is required for a violation.

Defendant Henningsen advances two arguments in an attempt to distinguish the law and the facts of this case from *Lam*. First, he contends that the two statutes are different because firefighters/emergency medical services providers and police officers have different duties and concerns. We find that argument unavailing. Firefighters, emergency medical services providers, and police officers all respond to emergency situations that need immediate attention and focus. In addition, the near-identical wording of the two statutes demonstrates that the legislature intended to treat all three types of emergency responders the same way in this context.

Henningsen also argues that it was not plaintiff's words that gave him probable cause to believe that she had violated the statute; instead, her physical conduct justified the arrest. Defendant contends that "the volume and aggressive tone of her voice and the positioning of her body," which took place close enough to the EMTs that they were distracted from their work, violated the statute and gave Henningsen probable cause to arrest her. That argument requires careful evaluation in light of our standard of review.

Viewing the facts in the light most favorable to plaintiff, as we must, we conclude that, after plaintiff told Bach what had happened, she moved out of the area immediately around the EMTs. When the father arrived, plaintiff yelled at him, and the two of them approached Bach, yelling as they did so. When plaintiff arrived where Bach was, five to nine feet from the victim, she told him that the victim's father had arrived and asked if he needed anything else from her. The father asked plaintiff what the EMTs wanted him to do. Plaintiff relayed his question to Bach, who said that the father should step back. Then he told plaintiff that she should step back, and she did so.

Under that view of the facts, defendant's argument reduces to a contention that plaintiff's yelling, which was not directed at the EMTs and which took place a minimum of five

to nine feet from where they were working on the victim, constituted physical conduct that was more than speech alone and violated the statute because it interfered with the EMTs by distracting them from their work. We disagree. In light of *Lam*, plaintiff's conduct was not capable of violating the statute.

The question is whether plaintiff's voice—the noise that she made by yelling at the father—was independent physical conduct, *i.e.*, in the words of Representative Prozanski, "conduct that is causing the officer to do something as compared to words that are spoken by an individual." We conclude that the representative's statement indicates that the noise of a person's voice is not physical conduct capable of violating the statute.

Representative Prozanski's statement was made in response to Swenson's concern that the bill might be unconstitutional just as the ordinance at issue in *Anderson* was. *Lam*, 176 Or App at 157. In *Anderson*, we had faulted the ordinance for potentially applying to the distraction of an officer that could result from someone calling to him or her. *Id.* at 156-57. Accordingly, we understand Representative Prozanski's statement that the statute would only apply to "physical conduct" to require more than the noise of a person's voice distracting an officer. Thus, we conclude that the noise made by plaintiff's voice was not "physical conduct" capable of violating the statute merely because it distracted the EMTs. As a result, Henningsen lacked probable cause to arrest plaintiff for violating ORS 162.257.

Despite the lack of probable cause for the arrest, however, Henningsen is still entitled to qualified immunity if plaintiff's right not to be arrested for her conduct was not "clearly established" at the time. We conclude that it was not. Accordingly, Henningsen was entitled to qualified immunity, and the trial court erred in denying the motion for directed verdict on plaintiff's section 1983 claim.

To determine whether the law was "clearly established," we must evaluate " 'the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.' " *Pearson v. Callahan*, 555 US 223, 244, 129 S Ct 808, 172 L Ed 2d 565

(2009) (quoting *Wilson v. Layne*, 526 US 603, 614, 119 S Ct 1692, 143 L Ed 2d 818 (1999)). First, where the law itself is unclear, would a reasonable officer be able to decipher the law? Second, if the law is established with respect to some sets of facts, would a reasonable officer realize how the law applies to a different set of facts? Here we determine both issues: First we conclude that a reasonable officer would have known that ORS 162.257 does not apply to speech alone. Then we determine that the facts here were not similar enough to the facts of *Lam* to make it clear that plaintiff's conduct was not prohibited by ORS 162.257.

Officers' interpretations of statutes "must be reasonable in light of existing law." *Northen v. City of Chicago*, 126 F3d 1024, 1028 (7th Cir 1997), *cert den*, 523 US 1023 (1998); *see also Rosenbaum v. Washoe County*, 663 F3d 1071, 1078-79 (9th Cir 2011) (officer's interpretation was unreasonable because statute was not susceptible to officer's reading of it); *Solis v. Oules*, 378 Fed Appx 642, 643 (9th Cir 2010) (officer's interpretation was not unreasonable where statute's meaning was uncertain and officer confirmed his interpretation with Washington State Patrol before citing the plaintiff). Here, it was not reasonable to interpret ORS 162.257 to apply to speech alone. In other words, after *Lam*, the law was sufficiently clear that a reasonable officer would have known that the statute could not apply to speech alone.

A reasonable police officer is familiar with the jurisdiction's case law. *See, e.g., Reher v. Vivo*, 656 F3d 772, 776 (7th Cir 2011) (reasonable officers would be familiar with Illinois state case law). Therefore, a reasonable officer would know that ORS 162.257 does not apply to speech alone because he or she would know the holding of *Lam* regarding ORS 162.247, and, as discussed above, ORS 162.257 and ORS 162.247 are nearly identical. The only difference between the two is that "peace officer" in ORS 162.247 is replaced with "firefighter or emergency medical services provider" in ORS 162.257. A reasonable police officer would know that a statute prohibiting the same type of conduct, structured in the same way, and using the same language as another statute is subject to the same limitations as the other statute. Thus, interpreting ORS 162.257 to apply to speech alone would have been unreasonable in light of *Lam*.

However, a reasonable officer could have believed that plaintiff's conduct differed enough from the facts of *Lam* that it constituted more than "speech alone." The Supreme Court has often attempted to clarify the proper standard for "clearly established" law as it applies to factual differences between cases. It has explained:

"[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances. Indeed, in [*United States v.*] *Lanier*[, 520 US 259, 117 S Ct 1219, 137 L Ed 2d 432 (1997)], we expressly rejected a requirement that previous cases be 'fundamentally similar.' * * * [T]he salient question * * * is whether the state of the law [when the conduct took place] gave respondents fair warning that their [conduct] was unconstitutional."

*Hope v. Pelzer*, 536 US 730, 741, 122 S Ct 2508, 153 L Ed 2d 666 (2002).

Thus, the question is whether *Lam* gave Henningsen fair warning that plaintiff's conduct constituted only speech. In *Lam*, the defendant spoke words that prevented a third person from telling the officer where the probationer was. We did not discuss the significance of surrounding circumstances like the tone or volume of the speech, its proximity to the officer, or its tendency to distract the officer from his task. As a result, *Lam* did not fairly notify Henningsen that the noise plaintiff made while she was close to the EMTs could not constitute more than "speech alone." Thus, the meaning of ORS 162.257 was not "clearly established" with respect to plaintiff's conduct, and the trial court should have granted defendant's motion for directed verdict on his qualified immunity defense.

## II.  PLAINTIFF'S ASSIGNMENTS OF ERROR

We therefore move to plaintiff's assignments of error as they apply to her remaining claim against defendant Washington County for false arrest. Plaintiff assigns error to (1) the trial court's denial of her proposed jury instruction, (2) the jury instruction given by the court, and (3) the trial court's grant of defendants' motion *in limine*. We address the two assignments regarding jury instructions. In light of our

disposition of those assignments, we do not reach the third assignment.

A. *Jury Instructions*

"Oregon law recognizes 'two different types of error respecting jury instructions: (1) error in the failure to give a proposed jury instruction, and (2) error in the jury instructions that actually were given.'" *Estate of Michelle Schwarz v. Philip Morris Inc.*, 348 Or 442, 452, 235 P3d 668, *adh'd to as modified on recons*, 349 Or 521, 246 P3d 479 (2010) (quoting *Williams v. Philip Morris Inc.*, 344 Or 45, 55-56, 176 P3d 1255 (2008), *cert dismissed as improvidently granted*, 556 US 178 (2009)). Plaintiff argues that the trial court erred both in rejecting her proposed jury instruction explaining the limitation on the ambiguous text of ORS 162.257 and in instructing the jury by paraphrasing the words of that statute without giving any clarifying instruction.

First we evaluate plaintiff's assertion that the trial court erred in declining to give her requested instruction. "Oregon law entitles a party to have a proffered instruction given only if that instruction correctly states the law and engages the pleadings and the evidence." *Id.* Plaintiff proposed the following jury instruction:

"A violation of ORS 162.257 occurs when a person, knowing that another is a firefighter or emergency medical technician, intentionally engages in physical conduct that creates an insurmountable obstacle or insurmountable impediment to the firefighter's or emergency medical technician's performance of his or her lawful duties. Words alone are not enough to violate ORS 162.257."

As noted, ORS 162.257 provides, in part:

"A person commits the crime of interfering with a firefighter or emergency medical services provider if the person, knowing that another person is a firefighter or emergency medical services provider, intentionally acts in a manner that prevents, *or attempts to prevent*, a firefighter or emergency medical services provider from performing the lawful duties of the firefighter or emergency medical services provider."

(Emphasis added.) Because plaintiff's requested jury instruction does not address the "attempts to prevent" language in

the statute, it does not correctly state the law.[15] Therefore, the trial court did not err in declining to give plaintiff's requested instruction.

Plaintiff also assigns error to the jury instruction that the court gave regarding ORS 162.257. "In reviewing jury instructions, we will reverse only if we 'can fairly say that the instruction probably created an erroneous impression of the law in the minds of the jurymen which affected the outcome of the case.'" *Bray v. American Property Management Corp.*, 164 Or App 134, 142, 988 P2d 933 (1999), *rev den*, 330 Or 331 (2000) (quoting *Waterway Terminals v. P. S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970)); *see also State v. Williams*, 313 Or 19, 38, 828 P2d 1006, *cert den*, 506 US 858 (1992) ("For an instruction to constitute reversible error, it must have prejudiced the [objecting party] when the instructions are considered as a whole."). "[W]hen a trial court incorrectly instructs the jury on an element of a claim or defense and when that incorrect instruction permits the jury to reach a legally erroneous result, a party has established that the instructional error substantially affected its rights[.]" *Wallach v. Allstate Ins. Co.*, 344 Or 314, 329, 180 P3d 19 (2008).

Plaintiff argues that the trial court's instruction—which recited only the words of ORS 162.257, without any amplification—was erroneous because the phrase "acts in a manner that prevents, or attempts to prevent" is ambiguous. We so held in *Lam*, as plaintiff pointed out to the trial court. Given that the phrase is, as we held, ambiguous, the trial court should have, as we did in *Lam* with respect to ORS 162.247, clarified that ORS 162.257 does not apply to speech alone. The trial court's failure to do so was prejudicial to plaintiff because, as discussed above, viewing the facts in the light most favorable to her, she engaged in speech alone. Therefore, we must reverse and remand plaintiff's false arrest claim.

---

[15] As noted above, 248 Or App at 63 n 2, when plaintiff was arrested, and when she proposed her jury instruction, the statute used the term "emergency medical technician" where "emergency medical services provider" appears in the current version. Therefore, plaintiff's use of "emergency medical technician" in her proposed jury instruction correctly reflected the wording of the statute at the time.

## B. *Defendants' Motion In Limine*

Finally, plaintiff assigns error to the trial court's grant of defendants' motion *in limine*. Before trial, defendants moved to exclude evidence regarding the dismissal of the criminal charges against plaintiff, and the court granted the motion. Because we remand, we need not, and do not, express any opinion as to the merits of that assignment. Although the issue may arise again on remand, the record may develop differently. *See Shank v. Board of Nursing*, 220 Or App 228, 238 n 8, 185 P3d 532 (2008) (declining to address, *inter alia*, "evidentiary issues that may or may not arise on remand").

In conclusion, we hold that the trial court did not err in denying defendant Washington County's motion to dismiss and motion for directed verdict on plaintiff's false arrest claim, but it did err in denying defendant Henningsen's motion for directed verdict on his qualified immunity defense to plaintiff's section 1983 claim. The trial court also erred in instructing the jury regarding ORS 162.257 without clarifying that speech alone cannot violate the statute. We therefore remand for a new trial on plaintiff's false arrest claim against Washington County. We do not express any opinion regarding plaintiff's third assignment of error, regarding the trial court's grant of defendants' motion *in limine*.

Judgment on claim for false arrest reversed and remanded; otherwise affirmed.