Argued and submitted September 22, 2006, reversed and remanded May 9, 2007

Traci COLE,
fka Traci Stegmann,
*Plaintiff-Appellant,*

*v.*

SUNNYSIDE MARKETPLACE, LLC,
an Oregon corporation;
Elliott Associates, Inc.,
an Oregon corporation;
Chester Lawrence Gunter, Jr.;
and Starbucks Corporation,
a foreign corporation,
*Defendants,*

*and*

HARBOR SECURITY, INC.,
an Oregon corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
030201429; A126877

160 P3d 1

Robert K. Udziela argued the cause and filed the briefs for appellant.

Thomas W. Brown argued the cause for respondent. With him on the brief were Robert E. Sabido and Cosgrave Vergeer Kester LLP.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

LANDAU, P. J.

## LANDAU, P. J.

This is a personal injury case that arises out of an incident in which plaintiff was abducted from her place of employment and raped. She initiated this action against, among others, her employer and the security contractor that her employer had hired at the time of the assault, Harbor Security, Inc. (Harbor). The sole issue on appeal is whether plaintiff's claim against Harbor is barred by the applicable statute of limitations. The trial court granted summary judgment in favor of Harbor on the ground that the action is time-barred. Plaintiff now appeals, and we reverse.

### I.  FACTS

The relevant facts are uncontested. Plaintiff worked in a Starbucks coffee shop located in the Sunnyside Marketplace, a moderate-sized "strip" mall in Clackamas. On December 30, 2001, plaintiff arrived at the coffee shop and prepared to open. At approximately 6:20 a.m., Chester Gunter entered the shop pretending to have a gun. He abducted plaintiff, drove her away from the mall, and raped her. He was later apprehended and, in August 2002, convicted of rape, kidnapping, robbery, and other offenses.

On February 11, 2003, plaintiff filed a complaint against Gunter; Sunnyside Marketplace, LLC (Sunnyside); and Elliott Associates, Inc. (Elliott), the mall's property manager. In her complaint, plaintiff alleged that Sunnyside and Elliott had been negligent in failing to provide adequate security, including failing to provide security patrols in the parking lot, designing the mall without considering certain security hazards, and failing to provide surveillance cameras. In June 2003, plaintiff filed an amended complaint adding Starbucks Corporation (Starbucks) as a defendant and alleging that Starbucks had similarly been negligent in failing to take adequate security measures.

On June 20, 2003, plaintiff served on Sunnyside and Elliott a request for the production of documents. The request sought, among other things, "any and all contracts with any security companies providing services to Sunnyside Marketplace." Sunnyside and Elliott responded to that request six months later, in December 2003, providing documents that

showed that Harbor was providing such services to the mall. Specifically, those documents showed that Sunnyside had contracted with Harbor to patrol the mall two to three times each night, between the hours of 7:00 p.m. and 6:00 a.m.

On April 6, 2004, two years and 98 days after the incident in which plaintiff was abducted and raped, she filed a second amended complaint, adding Harbor as a defendant and alleging that Harbor was negligent in providing security services at the mall on the morning of the incident.

Harbor moved for summary judgment, contending that, under the applicable statute of limitations, ORS 12.110(1), plaintiff was required to initiate her claim within two years from the date on which she was assaulted. Harbor argued that, by the time plaintiff filed her second amended complaint, the statute of limitations had expired more than three months earlier. Plaintiff responded that her claims against Harbor were not time-barred. Under the "discovery rule," plaintiff argued, the two-year statute of limitations period did not begin until December 2003, when she learned for the first time that Harbor might be liable for her injuries.

The trial court granted Harbor's motion for summary judgment and dismissed plaintiff's claims against Harbor, concluding that plaintiff had failed to initiate her action before the statute of limitations had expired. The trial court explained that, under the circumstances of this case, the discovery rule cited by plaintiff was inapplicable. According to the trial court, Harbor's existence and identity were readily discoverable at the time of plaintiff's injury. In the absence of specific reasons why plaintiff was prevented from discovering Harbor's existence, the court concluded, there was no basis for tolling the statute of limitations.

## II. ANALYSIS

On appeal, plaintiff argues that the trial court erred in granting Harbor's motion for summary judgment. Plaintiff argues that there is a basis for tolling the statute of limitations. According to plaintiff, the Supreme Court has long held that ORS 12.110(1) is subject to the discovery rule, and, under that rule, the running of the statute of limitations with respect to her claims against Harbor was tolled until she

knew or reasonably should have known of the possibility that Harbor was liable for her injury. She argues that, at the time of the rape, she was completely unaware that any security company provided services for the mall and that it is at least a jury question whether she reasonably should have acquired that knowledge by April 6, 2002—two years before she filed her second amended complaint naming Harbor as a defendant.

Harbor responds that, for two reasons, the trial court properly granted its motion for summary judgment. First, Harbor argues, as a matter of simple statutory construction, ORS 12.110(1) contains no discovery rule, and, under the rules of statutory construction set forth in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), we cannot read a discovery rule into the statute where none exists. Harbor acknowledges that a long line of cases holds that ORS 12.110(1) *is* subject to the discovery rule. Harbor nevertheless insists that those cases were decided without properly applying the rules of statutory construction set forth in *PGE* and are therefore not controlling.

Second, Harbor contends, even if the applicable statute of limitations is generally subject to the discovery rule, the rule does not apply in this case. Harbor argues that, under *Gehrke v. CrafCo, Inc.*, 143 Or App 517, 923 P2d 1333 (1996), *rev den*, 324 Or 560 (1997), the discovery rule does not apply when the existence and identity of the alleged tortfeasor is "inherently discoverable" from the moment of injury. In this case, Harbor argues, the identity of the security contractor that provided services to the Sunnyside mall was inherently and easily discoverable from the time of the injury.

Thus framed, the parties' arguments on appeal raise two related issues with respect to the discovery rule and its application to this case: (1) whether the applicable statute of limitations, ORS 12.110(1) is *ever* properly subject to the discovery rule; and (2) if so, whether, as a matter of law, the rule did not toll the statute of limitations under the facts of this case. We consider each of those issues in turn, concluding that the statute of limitations that governs plaintiff's claims in this case is subject to the discovery rule and that, under

that rule, the dispositive inquiry—whether her claims were brought within two years of the time that she knew or reasonably should have known of the substantial possibility of Harbor's liability—is a question of fact properly reserved for the jury.

A. *Does ORS 12.110(1) include a "discovery" provision?*

Whether ORS 12.110(1) includes a discovery provision poses a question of statutory construction, which we resolve by the application of the familiar rules described in *PGE*. 317 Or at 610-12. We attempt to determine the meaning of the statute that the enacting legislature intended, looking first to the text of the statute in context and, if necessary, to legislative history and other aids to construction. *Id.* In examining the text of the statute, we consider prior judicial construction and, in particular, any prior Oregon Supreme Court construction, which "becomes part of the statute as if written into it at the time of its enactment." *Stephens v. Bohlman*, 314 Or 344, 350 n 6, 838 P2d 600 (1992).

■ ORS 12.010 provides that actions are to be commenced within the time periods described by statute, "after the cause of action shall have accrued." In this case, the parties agree that the controlling statute of limitations is ORS 12.110(1), which provides:

"An action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

The statute plainly provides that, in an action based on fraud or deceit, the two-year limitation period commences at the time of "discovery" of the fraud or deceit. This case, however, is not based on fraud or deceit; rather, it is based on personal injury. The question, then, is whether the statute provides that the two-year limitation in personal injury cases also commences at the time of the discovery of that injury.

On the surface, at least, the statute certainly could be read to foreclose the notion that any discovery rule applies

to personal injury cases. The statute consists of two independent clauses. One—pertaining to actions for fraud or deceit—mentions a discovery rule, while the other—pertaining to other actions not based on contract—does not. And it is fairly common for courts to conclude that, in such cases, the " 'use of a term in one section and not in another section in the same statute indicates a purposeful omission.' " *Springfield Utility Board v. Emerald PUD*, 339 Or 631, 642, 125 P3d 740 (2005) (quoting *PGE*, 317 Or at 611).

In fact, that is precisely how the Oregon Supreme Court interpreted ORS 12.110(1), at least at first. In *Vaughn v. Langmack*, 236 Or 542, 547, 390 P2d 142 (1964), the court examined the phrasing of the statute and concluded that, "[i]f a case of statutory construction ever called for the application of the maxim *expressio unius est exclusio alterius*, we have it here." The court noted that, as originally enacted, the statute contained no discovery provision at all. Then, the court explained, the legislature in 1919 enacted the clause that provides for a discovery rule in cases of fraud or deceit, apparently in response to a recent court decision on the subject, *Hood v. Seachrest*, 89 Or 457, 174 P 734 (1918). "Logic and common sense," the court declared,

> "make unavoidable the conclusion that when the legislature, evidently prompted by the decision in *Hood v. Seachrest*, amended the statute in 1919 so as to provide that the time limited for bringing an action based upon fraud or deceit should commence to run only from the discovery of the fraud or deceit, it intended that, as to all other actions, the provision that the time commences to run from the accrual of the cause of action should remain unchanged."

*Vaughn*, 236 Or at 547.

Two years later, however, the court changed its mind. In *Berry v. Branner*, 245 Or 307, 421 P2d 996 (1966), the court concluded that ORS 12.110(1) *does* include a discovery provision that applies to actions other than those based on fraud or deceit. The court acknowledged that the "exact question" was decided to the contrary in *Vaughn. Berry*, 245 Or at 309. The court concluded, however, that *Vaughn* had placed "too much emphasis" on the principle of negative

inference. According to the *Berry* court, "[t]he fact that the legislature saw fit to clarify the time of accrual with regard to undiscovered fraud does not necessarily mean that it was the original legislative intent that the discovery principle not apply in fraud cases." *Id.* at 310-11. The legislature, the court explained, could have intended from the outset that, in specifying that all statutory periods of limitation commence when an action "accrues," the law incorporates a discovery provision that applies more broadly. *Id.* at 311. The determinative question, the court declared, was the intended meaning of the term "accrues." *Id.* Turning to that question, the court concluded that

> "[t]he word 'accrue' is derived from the Latin 'ad' and 'creso' to grow to. When applied to independent or original demands it means to arise, to happen, to come into force or existence. *When used with reference to a cause of action it means when an action may be maintained thereon.* It accrues whenever one person may sue another. *Black's Law Dictionary,* 4th ed and cases cited therein. The cause of action must necessarily accrue to some person or legal entity. To say that a cause of action accrues to a person when she may maintain an action thereon and, at the same time, that it accrues before she has or can reasonably be expected to have knowledge of any wrong inflicted upon her is patently inconsistent and unrealistic. She cannot maintain an action before she knows she has one."

*Id.* at 311 (emphasis in original).

Following *Berry*, the Supreme Court has concluded that a discovery rule applies to a variety of different claims that arise under ORS 12.110 and other statutes. *See, e.g., Gaston v. Parsons*, 318 Or 247, 254, 864 P2d 1319 (1994) (medical malpractice, governed by ORS 12.110(4)); *Adams v. Oregon State Police*, 289 Or 233, 239, 611 P2d 1153 (1980) (actions under Oregon Tort Claims Act); *Frohs v. Greene*, 253 Or 1, 4, 452 P2d 564 (1969) (negligent medical diagnosis and treatment).

In the meantime, the court has neither overruled *Berry* nor suggested that the decision possesses anything less than the full effect of an authoritative construction by the state's highest court. *See Stephens*, 314 Or at 350. To the contrary, both the Supreme Court and this court have repeatedly

reaffirmed the application of a discovery rule to cases subject to ORS 12.110(1). *See, e.g., FDIC v. Smith,* 328 Or 420, 430-31, 980 P2d 141 (1999); *Doe v. American Red Cross,* 322 Or 502, 510-12, 910 P2d 364 (1996); *Stephens v. Bispham,* 316 Or 221, 227, 851 P2d 556 (1993); *U.S. Nat'l Bank v. Davies,* 274 Or 663, 669 n 1, 548 P2d 966 (1976); *Peterson v. Mult. Co. Sch. Dist. No. 1,* 64 Or App 81, 85, 668 P2d 385, *rev den,* 295 Or 773 (1983).

Harbor insists that, in fact, *Berry* does not have the full effect of an authoritative construction by the state's highest court because the decision in that case would not pass muster under the more recently adopted interpretive regime reflected in *PGE*. Harbor argues that the Supreme Court itself suggested as much in *Morales v. SAIF,* 339 Or 574, 124 P3d 1233 (2005). According to Harbor, because *Berry* was decided before *PGE* and without a proper application of the interpretive principles set out in that decision, under *Morales,* we are free to examine the meaning of ORS 12.110(1) unencumbered by reference to the Supreme Court's earlier decisions.

*Morales* was a workers' compensation case in which the issue was whether a statute, ORS 656.325(5)(b), entitled the claimant's former employer to cease paying certain benefits. The statute previously had been interpreted by the court in *Buddenberg v. Southcoast Lumber,* 316 Or 180, 850 P2d 360 (1993), and the claimant suggested that the decision was controlling. The court acknowledged that it had interpreted the statute in *Buddenberg,* but then stated, "in *Buddenberg,* this court did not analyze ORS 656.325(5)(b) under the now-familiar methodology for construing statutes that this court summarized in *PGE v. Bureau of Labor and Industries* * * *. This case presents the opportunity to do so." *Morales,* 339 Or at 578-79. The court then analyzed the statute anew. *Id.*

Thus, in *Morales,* the Supreme Court opted to revisit one of its own decisions. And, indeed, in other cases, the court has elected to reexamine—even overrule—its own statutory construction cases, notwithstanding its rule of prior construction. *See, e.g., State v. White,* 341 Or 624, 638, 147 P3d 313 (2006) (overruling *State v. Barnum,* 333 Or 297, 39 P3d 178

(2002), because *Barnum* was "mistaken" in its application of a statute). Nevertheless, it does not follow that, because the court has elected to reexamine *its own* decisions, we are free to do the same. To the contrary, the Supreme Court's statutory construction decisions—whether pre- or post-*PGE*—remain binding on us until the court itself reexamines them or until the legislature alters the statutes that they construed. *Bell v. Morales*, 207 Or App 326, 334, 142 P3d 76 (2006); *see also Schiffer v. United Grocers, Inc.*, 143 Or App 276, 284, 922 P2d 703 (1996), *rev'd on other grounds*, 329 Or 86, 989 P2d 10 (1999) ("We are not in the business of overruling decisions of the Oregon Supreme Court.").

As we have noted, the Supreme Court has never suggested that *Berry* is anything but good law. And the underlying statutory language has not changed since the court's decision in any material way. *Berry* is squarely controlling. We therefore reject Harbor's contention that ORS 12.110(1) should not be construed to include a discovery provision.

B.   *Was Harbor's role in plaintiff's injury "inherently discoverable"?*

We turn, then, to Harbor's alternative argument that, even if ORS 12.110(1) is generally subject to the discovery rule, the rule nonetheless does not aid plaintiff in this case because, as a matter of law, she knew or should have known all the relevant information more than two years before the filing of the second amended complaint. Harbor's argument in that regard takes two approaches. First, Harbor argues that, under our decision in *Gehrke*, the discovery rule does not "apply." Second, Harbor argues that, in any event, plaintiff knew or should have known about its possible role in causing her injuries more than two years before she filed the second amended complaint. Plaintiff argues that *Gehrke* is distinguishable because the relevant information in this case was not, in fact, inherently discoverable and that whether she knew or should have known of all the relevant information more than two years before the filing of the second amended complaint is a question of fact and cannot, at least on this record, be resolved as a matter of law.

In evaluating the parties' arguments, we note that they are framed within the context of a trial court ruling on

summary judgment. The standard of review applicable to our review of such rulings requires us to examine the evidence in the light most favorable to plaintiff, giving to plaintiff the benefit of all reasonable inferences, to determine whether there is a genuine issue of material fact and whether defendant is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 407-08, 939 P2d 608 (1997).

■ ■ Under the discovery rule, a statute of limitations does not begin until

> " 'the plaintiff knows or, in the exercise of reasonable care should know, facts that would make an objectively reasonable person aware of a substantial possibility that all three of the following elements exist: an injury occurred, the injury harmed one or more of the plaintiff's legally protected interests, and the defendant is the responsible party.' "

*Johnson v. Mult. Co. Dept. Community Justice*, 210 Or App 591, 593, 152 P3d 927 (2007) (quoting *Benson v. State of Oregon*, 196 Or App 211, 215, 100 P3d 1097 (2004)). When a plaintiff in the reasonable exercise of care should have become aware of a substantial possibility that another is responsible for her injury is a question of fact that can be resolved against the plaintiff on summary judgment only if the plaintiff should have achieved that awareness as a matter of law. *Johnson*, 210 Or App at 597-98.

■ In some cases, the relevant facts are so obvious to a reasonable person that they are said to be "inherently discoverable." In such cases, we have said that the discovery rule does not "apply." *E.g.*, *Workman v. Rajneesh Foundation International*, 84 Or App 226, 230, 733 P2d 908, *rev den*, 303 Or 700 (1987). The phrasing is perhaps imprecise; in such cases, the discovery rule "applies," but its application does not toll the statute of limitations because the information should reasonably have been discovered earlier. Our opinion in *Gehrke* illustrates the proper application of the principle.

In *Gehrke*, the plaintiff slipped and fell at a retail store. She filed an action against the registered owner of the store. Later, during discovery, she learned for the first time that she had incorrectly identified who owned the store. She

filed an amended complaint against the actual owner, but the statute of limitations had run by that time. The actual owner moved for summary judgment on statute of limitations grounds, and the trial court granted the motion. 143 Or App at 519-20. The plaintiff appealed, arguing that, under ORS 12.110(1), the statute of limitations did not begin to run until she discovered the identity of the owner of the store and that she did not learn that fact until shortly before she had filed the amended complaint. *Id.* at 522.

We rejected the plaintiff's argument. We explained that, although under *Berry* the discovery rule applied to ORS 12.110(1), the rule did not aid the plaintiff in that case because she reasonably should have known the identity of the defendant more than two years before she filed the amended complaint. That information, we stated, was "inherently discoverable." *Id.* at 524. We made clear that whether facts are "inherently discoverable" pertains to "whether the plaintiff in a negligence action has exercised due diligence to discover the requisite facts." *Id.* at 523. In that case, we explained, the plaintiff was actually aware of the store's causal involvement from the moment of her injury, and the identity of the actual owner of the store was information that any reasonable person could have timely acquired. *Id.* at 523-24.

We conclude that this is not a case in which the relevant facts as to Harbor's identity and possible responsibility for plaintiff's assault were so obvious at the time of plaintiff's injury that the information may fairly be said to be "inherently discoverable." This case is not controlled by *Gehrke*, where the plaintiff, at the time of her injury, knew the identity of the tortfeasor—the store—and simply did not exercise reasonable diligence in nailing down accurately the identity of the store's owner. In this case, at the time of her injury, plaintiff did not know the identity of the tortfeasor—Harbor—at all. In fact, it is undisputed that she did not know that Sunnyside mall had contracted with *anyone* to provide security.

■   There remains the question whether, as a matter of law, plaintiff in this case knew or should have known of the relevant facts some time after the injury but more than two

years before the date that she filed the second amended complaint against Harbor. We conclude that the matter cannot be resolved as a matter of law.

It is undisputed that plaintiff was aware of an injury to a legally protected interest on December 30, 2001, the date of her assault. It is also undisputed that she did not have actual knowledge of Harbor's existence until some time in December 2003 and that she did not file the second amended complaint against Harbor until April 6, 2004, two years and 98 days after the date of the assault. Thus, the question is whether the record before us demonstrates that, as a matter of law, plaintiff *should have known* of Harbor's existence more than two years before the filing of the second amended complaint—that is, some time within the 98 days following the assault—and of its contract to provide security services at the Sunnyside mall.

Harbor's only contention with respect to that question is that, if plaintiff had but asked for the information during the three months following her assault, she could have discovered it. In other words, Harbor argues that plaintiff had a duty to inquire and to inquire promptly.

Whether a plaintiff is subject to a duty to inquire about facts that might trigger a statute of limitations, however, is itself a question of fact. *Johnson*, 210 Or App at 599-600. The duty arises only when there are facts that would prompt a reasonable person to make the inquiry. *Id.* For example, in *Johnson*, the question was whether the plaintiff had a duty to inquire into the possible liability of a county department for a rape committed by someone who was under the department's supervision. "[T]he duty to inquire into the possible role of the government defendant," we held, "occurs when the plaintiff has facts that establish a connection between the person who actually and directly inflicts harm * * * and the government defendant." *Id.* at 600.

Moreover, and in any event, a statute of limitations to which the discovery rule applies is not triggered by a duty to inquire. As the Supreme Court made clear in *Greene v. Legacy Emanuel Hospital*, 335 Or 115, 123, 60 P3d 535 (2002),

> "The period of limitations in [ORS 12.110] commences from the earlier of two possible events: (1) the date of the plaintiff's *actual discovery* of injury; or (2) the date when a person exercising reasonable care *should have discovered* the injury, including learning facts that an inquiry would have disclosed. In neither of those circumstances does the period of limitations begin to run from the plaintiff's discovery of facts that serve only to trigger a duty to inquire about whether an injury has occurred."

(Emphasis in original.) When there is a duty to inquire, the court explained, "the period of limitations would commence at some later point when, after inquiry, the facts reasonably should disclose the existence of an actionable injury." *Id.*

In this case, Harbor identifies no basis for the recognition of a duty to inquire within the first 98 days of plaintiff's injury, much less for a conclusion that, as a matter of law, any inquiry would have resulted in the disclosure of Harbor's identity within that brief period of time. In that regard, it is perhaps worth recalling that, when plaintiff did ask about the existence of any security providers, it took six months to get a response.

In the end, Harbor's argument reduces to the assertion that plaintiff could have asked for the information earlier than she did. That, however, is not sufficient to trigger the statute of limitations. Particularly in light of the facts of this case—in which plaintiff was brutally kidnapped and raped and in which she, in fact, did not know of the existence of any security providers—we cannot say that, as a matter of law, plaintiff *should have known* about the existence of such security providers within the first 98 days following her injury. Accordingly, the trial court erred in granting Harbor's motion for summary judgment.

Reversed and remanded.