Argued and submitted July 9, 2012, reversed and remanded on plaintiffs' original negligence claim; otherwise affirmed February 27, petition for review denied July 3, 2013 (353 Or 787)

Todd DOUGHTON
and Belle Amie Doughton,
*Plaintiffs-Appellants,*

*v.*

Troy MORROW,
et al,
*Defendants,*

*and*

Erika RINDERKNECHT,
*Defendant-Respondent.*

Troy MORROW
and Brenda Morrow,
*Counterclaim Plaintiffs,*

*and*

Todd DOUGHTON
and Belle Amie Doughton,
*Counterclaim Defendants.*

Jackson County Circuit Court
073221E7; A148460

298 P3d 578

Robert E. Bluth argued the cause and filed the briefs for appellants.

Dominic M. Campanella argued the cause for respondent. On the brief were Mark R. Weaver, and Brophy, Schmor, Brophy, Paradis, Maddox & Weaver, LLP.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Plaintiffs brought this action against defendant, the developer who sold them the lot on which they built their home. To service the home, plaintiffs drilled a well on what they believed—based on the location of an access road and cul-de-sac—to be the northwest corner of their property. However, because the cul-de-sac had been constructed in a location that differed from its location as established by a recorded easement, plaintiffs' well and driveway were on a neighbor's property, not their own. In their original complaint, plaintiffs alleged that defendant was negligent in not constructing the cul-de-sac "in conformity with" the legal description in the easement. They subsequently filed an amended complaint alleging that defendant was negligent not only for constructing the cul-de-sac in a place that differed from the place in its legal description, but also for failing to build it in compliance with county construction standards. In the amended complaint, plaintiffs also alleged a breach of contract. Defendant successfully moved for summary judgment, arguing that plaintiffs' claims were time barred by the applicable statutes of limitation. On appeal, plaintiffs argue that the trial court erred in granting summary judgment on the original negligence claim regarding the location of the cul-de-sac, because there is a disputed issue of material fact as to the date when that claim accrued. We agree. However, we conclude that the trial court did not err in concluding that plaintiffs' negligence and breach of contract claims in the amended complaint were time barred. Therefore, we reverse in part and affirm in part.

Because this case comes to us on summary judgment, we state the facts and all reasonable inferences that can be drawn from them in the light most favorable to the nonmoving party, in this case plaintiffs, to determine whether there are any genuine issues of material fact and whether defendant is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). Defendant[1] owned and

---

[1] All references to "defendant" refer to Rinderknecht, the only defendant that is a party to this appeal.

developed a parcel of 11 lots in rural Jackson County. In 2002, defendant recorded a Private Road Maintenance and Access Declaration/Easement (Road Easement) describing an easement for a u-shaped private road to provide access from the lots to a public highway. The Road Easement provided, in part:

> "The private road shall be constructed to county standards, as required for use by eleven (11) residentially developed parcels; and shall be maintained and repaired in similar condition for such purpose.

> "The expenses of maintaining, repairing, and constructing the private road and easement shall be paid equally by the owners of those eleven (11) parcels which utilize same for residential purposes."

At some time in 2003, defendant decided that the road should dead-end in a cul-de-sac instead of reconnecting to the public highway in a u-shape. In December 2003, defendant rerecorded the Road Easement to reflect that change. Also in 2003, defendant hired a contractor to construct the road. In early 2004, the contractor encountered a rock shelf while excavating the cul-de-sac portion of the road, requiring him to excavate approximately 60 feet west of the planned location. The Road Easement was not amended to reflect that the cul-de-sac had been relocated to accommodate the rock shelf.

The access road was completed in June or July 2004.[2] Around that time, plaintiffs agreed to purchase tax lot 309 from defendant. Before closing, however—on July 8, 2004, to be precise—plaintiffs expressed concern to their realtor about "deep ruts in the gravel on the cul-de-sac" and questioned whether "this might create a problem with the county." Plaintiffs' realtor submitted a proposed addendum to the sale agreement, requesting that defendant make repairs. Defendant rejected the proposed addendum, and it did not become part of the sale agreement. On July 13, 2004, plaintiffs' realtor recommended in an e-mail that plaintiffs contact the local fire district to inquire about the condition

---

[2] The parties dispute when construction of the road was completed. Defendant contends that all improvements were completed in 2003. Because we review the record in the light most favorable to plaintiffs, the nonmoving party, we (like the trial court) regard June or July 2004 as the date the road was completed.

of the cul-de-sac. They did not do so. Despite the fact that the addendum was rejected, plaintiffs closed on the sale on July 14, 2004. The 2003 rerecorded Road Easement, reflecting the altered shape but not the actual location, was included in the documents at closing. The county subsequently issued plaintiffs a building permit, and plaintiffs built a home, complete with a driveway that connected to the cul-de-sac.

Plaintiffs needed a well. In July 2005, after two unsuccessful attempts to drill one, plaintiffs began a third attempt. They drilled in what they believed to be the northwest corner of their lot in a location that they believed to be within the utility easement on the cul-de-sac but that was, due to the erroneous location of the cul-de-sac, on their neighbors' property. On July 20, 2005, plaintiffs reached water. That evening, Brenda Morrow, one of the neighbors, called plaintiffs and stated, "Thanks for drilling me another well." The Morrows, with whom plaintiffs had a contentious relationship, explained to plaintiffs that the well was located on their (Morrows') property because the cul-de-sac's location did not match the legal description in the Road Easement. Plaintiffs promptly cancelled installation of the well pump and scheduled a survey to settle the boundary dispute. Sometime after July 20, before the survey was completed, the Morrows offered to sell the well to plaintiffs for $10,000, but plaintiffs rejected the offer because they wanted to wait until they had the results of the survey. That occurred on October 28, 2005, due to plaintiffs' inability to find a surveyor who was available any earlier. The survey confirmed that the cul-de-sac was not located as described in the Road Easement; rather it was located 60 feet west of where it was supposed to be. Consequently, the newly drilled well was located on the Morrows' lot. The survey also revealed that part of plaintiffs' driveway was on the Morrows' property.

On August 10, 2007—significantly, *more* than two years after the Morrows first told plaintiffs that the cul-de-sac was mislocated (July 20, 2005) but *less* than two years after that information was confirmed by the survey (October 28, 2005)—plaintiffs filed suit against defendant.[3] Plaintiffs

---

[3] Plaintiffs' realtor, the title company (Amerititle), and the Morrows were also named as defendants. They are not parties to this appeal.

alleged that defendant was negligent in "failing to have the cul-de-sac constructed as and at the location set forth in the Road Easement." Plaintiffs sought relief for the cost of moving their driveway and damages for drilling the well on their neighbors' property.

The case dragged on. Three years later, on August 18, 2010, plaintiffs filed an amended complaint, adding an additional claim of negligence and a breach of contract claim. Where the original negligence claim was based on the cul-de-sac's location, the new negligence claim was based on the cul-de-sac's (and the entire access road's) quality of construction, alleging that defendant was negligent in (1) failing to comply with the county land development ordinance; (2) failing to support a 50,000 pound carrying capacity; (3) failing to provide the minimum cul-de-sac diameter of 90 feet; (4) failing to provide proper grading; (5) failing to provide sufficient drainage and erosion control measures; (6) failing to provide adequate cut and fill excavations and retaining walls; and (7) failing to provide an adequate all-weather surface for emergency vehicles. Adding to the original complaint's request for relief, plaintiffs now also sought compensation for the cost of "hiring *** an engineering firm to assess the extent of the road and access issues" and "costs to bring the access road into compliance with Jackson County road standards and requirements." The breach of contract claim alleged that defendant breached the Road Easement by failing to construct the access road and cul-de-sac in conformity with Jackson County standards and failing to deliver a completed access road consistent with the recorded legal description.

Defendant moved to dismiss the amended complaint or, in the alternative, for summary judgment, alleging that plaintiffs' claims were barred by the relevant statutes of limitation. The trial court agreed, concluding that, as a matter of law, the original negligence claim regarding the location of the cul-de-sac, filed August 10, 2007, was barred by the two-year statute of limitations for negligence claims, ORS 12.110(1), because plaintiffs knew that the cul-de-sac was not constructed at the location described in the Road Easement when they were advised of that fact by the

Morrows on July 20, 2005. The trial court similarly concluded that the new negligence claim was also time barred, because plaintiffs had knowledge of some of the alleged defects in the road before closing on the property in July 2004, more than two years before they filed the original complaint in August 2007; thus, even if the amended complaint "related back" to the original complaint, ORCP 23 C, it was still time barred.[4] Additionally, the trial court concluded that the breach of contract claim, filed August 18, 2010, was barred by the six-year statute of limitation for breach of contract claims, ORS 12.080(1), because construction of the road and cul-de-sac was substantially completed no later than June or July 2004, more than six years after the alleged breach. The trial court subsequently entered a limited judgment against plaintiffs on each of their claims against defendant.

Plaintiffs appeal, ORS 19.205(1). They first argue that their original claim regarding negligent location of the cul-de-sac did not accrue until the boundary survey was completed on October 28, 2005, less than two years before the date that the claim was filed—or that, in any event, the date of accrual depends on resolving issues of fact, so summary judgment was inappropriate. Because the original claim was timely, they argue, their new claims for negligent construction and breach of contract in the amended complaint were also timely because those claims "relate back" to the allegations in the original complaint.

The first issue before us, then, is whether there are genuine issues of material fact as to when plaintiffs' original negligence claim regarding the location of the cul-de-sac accrued, so as to preclude summary judgment. ORCP 47 C; *Jones*, 325 Or at 408. Under ORS 12.110(1), a negligence claim must be commenced within two years of the date on which the cause of action accrues. ORS 12.110(1) incorporates a "discovery rule." *Berry v. Branner*, 245 Or 307, 309, 315-16, 421 P2d 996 (1966); *Cole v. Sunnyside Marketplace, LLC*, 212 Or App 509, 516-18, 160 P3d 1 (2007), *rev den*, 344 Or 558 (2008). That rule provides that

---

[4] ORCP 23 C provides, in part: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

the statute of limitations begins to run when the plaintiff knew or in the exercise of reasonable care should have known facts that would make a reasonable person aware of a substantial possibility that each of the three following elements exists: harm, causation, and tortious conduct. *Gaston v. Parsons*, 318 Or 247, 256, 864 P2d 1319 (1994). The discovery rule applies an objective standard—how a reasonable person of ordinary prudence would have acted in the same or a similar situation. *Id.* The discovery rule also has a "duty to inquire" aspect. *T. R. v. Boy Scouts of America*, 344 Or 282, 296, 181 P3d 758 (2008), *cert den*, 555 US 825. The Supreme Court explained in *Greene v. Legacy Emanuel Hospital*, 335 Or 115, 123, 60 P3d 535 (2002):

> "The period of limitations in [ORS 12.110] commences from the earlier of two possible events: (1) the date of the plaintiff's *actual discovery* of injury; or (2) the date when a person exercising reasonable care *should have discovered* the injury, including learning facts that an inquiry would have disclosed. In neither of those circumstances does the period of limitations begin to run from the plaintiff's discovery of facts that serve only to trigger a duty to inquire about whether an injury has occurred."

(Emphases in original.) When there is a duty to inquire, the court explained, "the period of limitations would commence at some later point when, after inquiry, the facts reasonably should disclose the existence of an actionable injury." *Id.*

Thus, the issue here reduces to this: Reviewing the record in the light most favorable to plaintiffs, do the undisputed facts establish that, as a matter of law, as of August 10, 2005—two years before plaintiffs filed the original complaint—plaintiffs knew or should have known that there was a substantial possibility that they had been harmed, that defendant caused the harm, and that the harm resulted from defendant's tortious conduct? There is no question that, if the cul-de-sac was in the wrong place, plaintiffs were harmed, nor does defendant deny that such harm, if it exists, was arguably the result of her negligence. The dispositive question, then, is whether plaintiffs, as a matter of law, knew or should have known as of August 10, 2005, that there was a substantial possibility that the well

was not on their property. We conclude that the facts do not compel that conclusion.

Defendant contends that plaintiffs were aware of a substantial possibility of harm when Morrow told them on July 20, 2005, that the well was on the Morrows' property. At that point, defendant reasons, plaintiffs demonstrated their belief by cancelling the installation of the well pump, hiring a surveyor, contacting their other neighbors, contacting the county, and attempting to negotiate with the Morrows for ownership of the well. Defendant argues that "the statute of limitations was not tolled while plaintiffs confirmed, by a survey, what they had been told by the Morrows."

We conclude that, as a matter of law, plaintiffs had a duty to make follow-up inquiries as soon as they heard Morrow's assertion that the well was on the Morrows' property. However, a duty to inquire does not trigger a statute of limitations to which the discovery rule applies. *Cole*, 212 Or App at 521. As noted above, "the period of limitations would commence at some later point when, after inquiry, the facts reasonably should disclose the existence of an actionable injury." *Greene*, 335 Or at 123. At the time when the duty to inquire arose, plaintiffs' only indication that the cul-de-sac was not correctly located and, hence, that their well was on the Morrows' property, was a statement by the Morrows—the neighbors with whom plaintiffs had a contentious relationship, and who had a concrete self-interest in claiming that the well was on their property. That information should have triggered—and did trigger—an inquiry, which ultimately produced confirming information. Thus, on this record, we cannot say that every reasonable juror would conclude that, based entirely on the assertion of the not-disinterested neighbors, plaintiffs were aware of or should have been aware of a substantial possibility that the neighbors were correct. The court therefore erred in granting defendant's motion for summary judgment with respect to plaintiffs' negligence claim in the original complaint regarding the cul-de-sac's location.

We must next determine whether the court also erred in granting summary judgment and dismissing the negligence claim in plaintiffs' amended complaint alleging

that the access road and cul-de-sac did not meet county construction standards. Plaintiffs argue that the claim is timely because it relates back to the date of the timely original complaint; both negligence claims, according to plaintiffs, arise out of the same conduct alleged in the original complaint. The trial court, however, did not reach the "relation back" argument with respect to this claim, concluding instead that, even if the new claim related back to the date when plaintiffs filed their original complaint, the claim was untimely. We agree. Before the July 2004 closing, plaintiffs complained to their realtor about "deep ruts in the gravel on the cul-de-sac" and questioned whether "this might create a problem with the county." Plaintiffs' realtor submitted a proposed addendum to the sale agreement, which stated:

> "Buyers having received necessary approvals from Jackson County are ready to settle escrow, subject to the following concerns:

> "The Seller provided road 'turn around' adjacent to Buyers' lot having partially collapsed and become heavily rutted apparently does not meet County Fire standards, necessary for issuance of the Buyers' building permit. Buyers request that Seller cause the contractor to repair and finish the 'turnaround,' and have the county inspect the turnaround to ensure that the county will issue the Buyers building permits in a timely fashion after closing."

Defendant rejected the proposed addendum, and it did not become part of the sale agreement. The realtor then sent an e-mail to plaintiffs stating:

> "In order to satisfy your own minds, you might want to call Fire District 3, and have them run out there since they are actually the ones who have to clear the drive for building permits. Just let me know what you would like to do, and I will do what I can to get it for you."

Unlike the information that plaintiffs had regarding the location of the cul-de-sac—information from a hostile and self-interested neighbor—the information regarding the condition of the road derived from plaintiffs' first-hand observation and was, for that reason, clearly reliable. The only conclusion that a reasonable juror could reach is that

plaintiffs were on notice or should have been on notice in July 2004 that there was a substantial possibility that the road was not constructed in compliance with county standards, and plaintiffs did not file suit within the requisite time thereafter. The trial court did not err in granting summary judgment to defendant on plaintiffs' negligent construction claim in the amended complaint regarding failure to build the road in compliance with county road standards.

Finally, we consider whether the court erred in granting summary judgment and dismissing plaintiffs' breach of contract claim. A breach of contract action for damages arising from the construction, alteration or repair of any improvement to real property is subject to a six-year statute of limitations. ORS 12.080(1); *Waxman v. Waxman & Associates, Inc.*, 224 Or App 499, 508-10, 198 P3d 445 (2008) (six-year statute of limitations in ORS 12.080(1) applies to real property construction contracts). "[I]t is well settled that a contract claim accrues on breach," and not when that breach is subsequently discovered. *Id.* at 512 (ORS 12.080 does not incorporate a discovery rule). Plaintiffs do not contend that they brought their contract claim within six years of the breach; they concede that the breach occurred when defendant completed construction of the access road and cul-de-sac, in June or July 2004 at the latest, and they brought this breach of contract action more than six years later, on August 18, 2010. They argue, however, that the claim is nonetheless timely because it relates back to the date plaintiffs filed their original complaint on August 10, 2007, and that date is within six years of the date of the breach.

ORCP 23 C provides, in part, that, "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." In applying that rule, the court first must identify the "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading"; and second, the court must determine whether the claim or defense alleged in the amended pleading *arose out of* that

conduct, transaction, or occurrence. *Griffith v. Blatt,* 334 Or 456, 464, 51 P3d 1256 (2002). The presence of different or additional issues in an amended pleading does not necessarily preclude application of the relation-back rule. *Id.* at 465. The essential inquiry under ORCP 23 C is one of notice: An amended complaint filed after the limitations period may relate back "if the defendant would have been able to discern from the earlier pleading a potential for the additional basis of liability." *Walters v. Hobbs,* 176 Or App 194, 208, 30 P3d 1214, *adh'd to as modified on recons,* 177 Or App 527, 33 P3d 1067 (2001).

Plaintiffs argue that the "conduct, transaction, or occurrence set forth * * * in the original pleading" is defendant's construction of the access road and cul-de-sac sometime in late 2003 or June or July 2004 at the latest. That argument demonstrates an inherent problem in applying ORCP 23 C by focusing exclusively on its terms: Whether the "conduct, transaction, or occurrence" in an original pleading gave rise to the claim subsequently alleged in an amended pleading depends entirely on the level of specificity at which the terms are interpreted. Thus, for example, at the broadest level, the "conduct, transaction, or occurrence" described in the original negligence claim in this case would encompass the entire process of developing the "subject properties":

> "[Defendant], acting as developer, undertook to develop the subject properties, including plaintiffs' and including the access road. Accordingly, [defendant] owed a duty to the lot owners, and their successors due to the binding nature of the Road Easement, to construct the access road in conformity with the Road Easement. [Defendant] breached that duty by failing to have the cul-de-sac constructed as and at the location set forth in the Road Easement. Such breach has and will cause plaintiffs to suffer damages, including but not limited to costs of moving their driveway, drilling a well on property other than their own, and costs and expenses resulting from such breach, including the costs and expenses of prosecuting this action against the Morrow defendants."

At its narrowest, the "conduct, transaction, or occurrence" in the original complaint would consist only of *recording the*

*location* of the access road and cul-de-sac. Nothing in ORCP 23 C indicates which level of specificity to adopt.

For that reason, we rely primarily on the judicial gloss on ORCP 23 C set forth in *Walters*, 176 Or App at 208. We examine the totality of the original complaint to determine whether it would provide notice to defendant of an additional basis of liability. Plaintiff relies primarily on the sentences,

> "[Defendant] owed a duty to the lot owners, and their successors due to the binding nature of the Road Easement, to construct the access road in conformity with the Road Easement. [Defendant] breached that duty by failing to have the cul-de-sac constructed *as and at* the location set forth in the Road Easement."

(Emphasis added.) Plaintiffs' theory is that the word "at" notified defendant of the claim regarding location, while the word "as" provided notice of the potential for a claim regarding manner of construction. We find that the phrase "as and at" is ambiguous, in that "as" could refer to location as well as manner. The ambiguity, however, does not survive the rest of the claim, where plaintiffs allege, "Such breach has and will cause plaintiffs to suffer damages, including but not limited to costs of moving their driveway, drilling a well on property other than their own, and costs and expenses resulting from such breach[.]" Read as a whole, the original negligence complaint would not notify a reasonable defendant that it was at risk of being found liable for failing to meet substantive construction standards of the entire access road. We conclude that, although the original negligence claim and the breach of contract claim in the amended complaint both allege culpable conduct involving the access road and cul-de-sac, the original complaint did not notify defendant that she was potentially liable for anything other than the erroneous location. The breach of contract claim did not relate back to the original complaint.

Reversed and remanded on plaintiffs' original negligence claim; otherwise affirmed.