Argued and submitted March 21, 2012, reversed and remanded
December 11, 2013

### Natache GUIRMA,
*Plaintiff-Appellant,*

*v.*

### Kathleen O'BRIEN,
*Defendant-Respondent.*

Multnomah County Circuit Court
110202358; A149047

316 P3d 318

Mark Kramer argued the cause for appellant. With him
on the briefs was Kramer & Associates.

Susan E. Watts argued the cause for respondent. With
her on the brief were Matthew J. Yium and Kennedy, Watts,
Arellano & Ricks LLP.

Before Armstrong, Presiding Judge, and Haselton, Chief
Judge, and Duncan, Judge.

DUNCAN, J.

**DUNCAN, J.**

In this professional negligence action, plaintiff alleged that defendant, an attorney who represented her in an adoption proceeding, committed malpractice by arranging to serve the birth mother with the adoption petition by publication. Defendant moved to dismiss the complaint under ORCP 21 A(9)[1] on the ground that it was untimely under the statute of limitations for professional negligence. ORS 12.010; ORS 12.110.[2] The trial court granted defendant's motion to dismiss, and plaintiff appeals. We reverse and remand.

We begin with a summary of the relevant law. A professional negligence action must be filed within two years of the date on which the claim accrues. ORS 12.010; ORS 12.110(1); *U.S. Nat'l Bank v. Davies*, 274 Or 663, 665-66, 548 P2d 966 (1976). With respect to legal negligence claims, Oregon follows the "discovery rule" for determining when a claim accrues. *Id.* at 666. Under the discovery rule, a legal negligence claim accrues when a client knows or, in the exercise of reasonable care, should know that there is a substantial possibility that she has an actionable injury. *Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or 270, 277, 265 P3d 777 (2011); *Murphy v. Allstate Ins. Co.*, 251 Or App 316, 321, 284 P3d 528 (2012). An actionable injury in a legal negligence claim consists of harm, causation, and tortious conduct. *Kaseberg*, 351 Or at 277. Thus, under the discovery rule, a claim for legal negligence accrues, and the statute of limitations begins to run, when the client knows or, in

---

[1] ORCP 21 A(9) provides that the defense "that the pleading shows that the action has not been commenced within the time limited by statute" may be made by motion to dismiss.

[2] ORS 12.010 provides:

"Actions shall only be commenced within the periods prescribed in this chapter, after the cause of action shall have accrued, except where a different limitation is prescribed by statute."

ORS 12.110(1) provides:

"An action * * * for any injury to the person or rights of another, not arising under contract, and not especially enumerated in this chapter, shall be commenced within two years[.]"

An action for professional negligence is one "not especially enumerated in this chapter."

the exercise of reasonable care, should know that there is a substantial possibility that (1) he or she has suffered harm, (2) the harm was caused by the lawyer's acts or omissions and, (3) the lawyer's acts or omissions were tortious. *Id.* at 278.

Dismissal under ORCP 21 A(9) is appropriate only when a complaint shows on its face that the action was not timely filed. ORCP 21 A(9) (a defendant may move to dismiss on the ground that "the pleading shows that the action has not been commenced within the time limited by statute"); *Doe v. Lake Oswego School District,* 353 Or 321, 323, 334, 297 P3d 1287 (2013) (trial court erred in dismissing the complaint under ORCP 21 A(9) where the "plaintiffs alleged facts from which a jury could find that these plaintiffs reasonably did not reach [the conclusion that the defendant abuser's touching was offensive] at the time of [the defendant abuser's] actions"); *Allen v. Lawrence,* 137 Or App 181, 186, 903 P2d 919 (1995), *rev den,* 322 Or 644 (1996) (question is whether "the pleading on its face shows that the action was not timely filed"). An appellate court accepts the facts alleged in the complaint as true and determines whether those facts, if proved, would allow a reasonable trier of fact to find that the action was commenced within the time limited by statute. *Doe,* 353 Or at 323, 333, 334 ("A court cannot decide [whether a claim had accrued at a particular time] as a matter of law unless the only conclusion that a reasonable trier of fact could reach is that the plaintiff knew or should have known the critical facts at a specified time."); *see also Yanney v. Koehler,* 147 Or App 269, 272, 272 n 1, 935 P2d 1235, *rev den,* 325 Or 368 (1997) (observing that, in reviewing the trial court's grant of a motion to dismiss for failure to state a claim under ORCP 21 A(8), appellate court accepts as true all well-pleaded factual allegations and gives the plaintiff the benefit of all favorable inferences that may be drawn from the facts alleged).

Given those standards, the issue in this case is whether, based on the facts alleged in plaintiff's complaint, a reasonable trier of fact could find that plaintiff filed her complaint less than two years after she knew or, in the exercise of reasonable care, should have known of a substantial possibility that (1) she had suffered harm, (2) the harm was

caused by defendant's acts or omissions, and (3) defendant's acts or omissions were tortious. If a reasonable trier of fact could so find, then the trial court erred in dismissing the complaint. Because plaintiff filed her complaint on February 23, 2011, the complaint must raise a question of fact about whether she knew or she did not know and, in the exercise of reasonable care, should not have known of the elements of her claim *until* February 23, 2009 or thereafter.

The relevant facts, as alleged in plaintiff's complaint, are as follows.[3] Plaintiff's daughter, J, had two children, A and R. As of September 2005, plaintiff was a legal guardian of A and foster parent of R. In September 2005, plaintiff consulted defendant and retained her to pursue adoption of A. Plaintiff relied on defendant's expertise in adoption matters and did not seek advice from any other attorney about the adoption. During their first consultation, plaintiff told defendant that J was having regular visits with R at a Department of Human Services (DHS) office. On September 21, 2005, defendant filed a petition on plaintiff's behalf, seeking adoption of A.

In January 2006, defendant drafted a motion for an order authorizing service of the adoption petition on J by publication. Service by publication is described in ORCP 7 D(6), which requires, *inter alia*, "a showing by affidavit or declaration that service cannot be made by any method otherwise specified in these rules or other rule or statute[.]" ORCP 7 D(6)(a). Defendant drafted an affidavit, which plaintiff signed, that stated that "the present whereabouts of [J] are unknown to me."

Defendant filed the motion and affidavit, and the circuit court ordered service by publication. J was served by publication with the adoption petition and an order to show cause why her consent to the adoption should not be waived. After service by publication had been effected, J was arrested. Plaintiff advised defendant that J had been

---

[3] As noted, plaintiff filed her original complaint on February 23, 2011. On March 28, 2011, before defendant had filed a responsive pleading, plaintiff filed her first amended complaint. Defendant then moved to dismiss the first amended complaint. All references to the allegations of the complaint in this opinion are to the first amended complaint.

arrested and was being held at the Multnomah County Justice Center. Defendant did not amend her pleadings or advise the court that J was being held at the justice center. J did not appear at the show-cause hearing. The circuit court waived J's consent to the adoption and, on June 2, 2006, granted plaintiff's adoption of A.

On June 1, 2007, J moved to set aside A's adoption, claiming that the waiver of her consent to the adoption had violated her due process rights. J alleged that plaintiff had "perpetrated a fraud" on the court by seeking service by publication and claiming that J's whereabouts were unknown while knowing that J was having regular visits with R at a DHS office. During a February 25, 2009, hearing on J's motion, in the words of plaintiff's complaint:

> "Judge Tennyson * * * opined that she was stunned 'that [plaintiff] and/or her lawyer at the time [of seeking service of the adoption by publication] was filing an affidavit in [A]'s adoption case that represented that [plaintiff] did not know an address for [J] when [J] was regularly visiting [R] at Juvenile Court * * *.' Judge Tennyson went on to opine that she thought the process by which service by publication was obtained was not 'appropriate.'"

(Second brackets in original.) Nevertheless, the trial court dismissed J's motion to set aside the adoption. J appealed, and this court affirmed; J then sought review from the Supreme Court, which reversed. *J. G. v. N. D. G.*, 233 Or App 509, 226 P3d 130, *rev'd*, 348 Or 525, 236 P3d 709 (2010).[4] After remand, the trial court held a settlement conference, and, ultimately, on March 24, 2011, the parties stipulated to set aside the adoption but to allow plaintiff to retain custody of A.

---

[4] In *J. G.*, the Supreme Court explained that the trial court had dismissed J's petition to set aside the adoption based on Multnomah County Supplemental Local Rule 8.012(2), which requires in part that "[m]otions not settled or reset within 5 months of filing" be "automatically dismissed" and on the doctrine of laches as applied to J's delay of approximately 18 months in pursuing her motion after she had filed it. 348 Or at 530. The Supreme Court concluded that neither basis supported the trial court's decision. *Id.* at 532-34. Moreover, to the extent that the trial court's decision was based on a "free-floating concern for the child's best interests," the Supreme Court explained that the trial court could not properly act on that concern in the absence of some legal or equitable principle supporting the dismissal of J's motion. *Id.* at 534.

Plaintiff's complaint alleged that defendant breached the following duties to plaintiff:

"A.  Not to submit any pleading to the Court that was false or contained a material omission relevant to any requests made to the Court;

"B.  To include in the affidavit supporting service by publication that she prepared for Plaintiff, that [J] was having regular visitation with [R] at a local DHS office;

"C.  After she became aware of [J]'s arrest on March 31, 2006, to amend her pleadings or otherwise inform the Court that a location for [J] had been obtained;

"D.  After the order waiving [J] and birth father's consent had been obtained, but before submitting the adoption decree to the Court, to inform the Court that [J] had been located;

"E.  To advise Plaintiff regarding the consequences of proceeding with an adoption through a notice by publication premised upon a material omission to-wit that [J] was having regular contact with [R] at a DHS office, specifically that such an adoption would be vulnerable to being set aside later by motion of [J];

"F.  To advise Plaintiff regarding the consequences of not informing the Court of [J]'s arrest and location after March 31, 2006 and before the order waiving the consent had been granted and thereafter, subsequent to the order waiving consent having been granted and prior to the submission of the adoption, specifically that such an adoption would be vulnerable to being set aside by later motion of [J]."

Plaintiff's complaint further alleged that, as a result of defendant's breach of those duties, plaintiff had incurred economic damages, including attorney fees, and had suffered emotional distress. Plaintiff sought $36,348 in economic damages and $100,000 in noneconomic damages.

As mentioned, defendant moved to dismiss plaintiff's complaint on the ground that it was barred by the statute of limitations. In support of her motion, defendant argued that the allegations in the complaint show that plaintiff knew

or, in the exercise of reasonable care, should have known of her legal malpractice claim as soon as J moved to set aside the adoption in June 2007. According to defendant, at that point, plaintiff knew or should have known that (1) she had been harmed (because the adoption was being challenged), (2) the harm was caused by defendant (because defendant had prepared the affidavit in support of service by publication that was the basis for the challenge to the adoption), and (3) defendant's actions were negligent (because the affidavit represented that J's present whereabouts were unknown even though plaintiff had informed defendant that J was visiting R at DHS and, later, that J had been arrested). Thus, defendant argued, plaintiff's claim accrued in June 2007, more than three and a half years before plaintiff filed her complaint in February 2011.

The trial court accepted defendant's argument. In a written order, the court concluded that plaintiff's action against defendant accrued when J moved to set aside the adoption:

> "The court holds that the statute of limitations in this case began to run when plaintiff learned that [J] had filed a motion to set aside the adoption based on the false affidavit that plaintiff had signed. At that time, plaintiff knew or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that defendant's purported advice to sign and submit the false affidavit was tortious and harmed her. * * * When plaintiff learned that a motion to set aside the adoption had been filed based on her false affidavit, plaintiff knew or should have known that *some* harm had been incurred and that *a* claim existed. * * * Plaintiff suggests that, as a lay person, she lacked the legal sophistication to appreciate that she had a claim of legal malpractice. However, a reasonable person in her circumstances—after having signed the false affidavit and then learning of the motion to set aside the adoption based on the false affidavit—would have been aware of a substantial possibility that a claim of malpractice existed.

> "The complaint in this case was filed on February 23, 2011. Nothing in the complaint alleges that plaintiff did not learn of [J]'s motion to set aside the adoption until on or after February 23, 2009, *i.e.*, within two years of the date the

complaint was filed. * * * Accordingly, defendant's motion to dismiss based on statute of limitations is granted."

(Emphasis in original.)

Plaintiff appeals, asserting that the trial court erred in dismissing her complaint as untimely. Plaintiff argues that the facts alleged in her complaint establish that she did not know or have reason to know that defendant's conduct had been tortious until, at the earliest, the hearing on February 25, 2009, when, according to the complaint, Judge Tennyson stated that "she thought the process by which service by publication was obtained was not 'appropriate.'"[5] Alternatively, plaintiff argues that, even if the facts alleged in her complaint do not establish, as a matter of law, that her claim did not accrue until at least February 25, 2009, there are unresolved factual issues regarding whether it accrued within two years of the date she filed the complaint, February 23, 2011.

At the outset, we note that, under our standard of review, the question is not whether the facts alleged in plaintiff's complaint established, as a matter of law, that the complaint was timely filed. Rather, it is whether those facts established, as a matter of law, that it was *not* timely filed. Thus, dismissal was inappropriate if, as plaintiff contends in her alternative argument, there are unresolved factual issues about the timeliness of her complaint.

The fact that J moved to set aside the adoption did not, in and of itself, inform plaintiff of a substantial possibility that defendant had been negligent. As the Supreme Court has observed, a legal malpractice claim does not necessarily accrue when the client is sued.[6] *Kaseberg*, 351 Or at 279; *Davies*, 174 Or at 669; *Fliegel v. Davis*, 73 Or App 546,

---

[5] Plaintiff also argues that she lacked knowledge or reason to know that she had suffered harm until 2010, when the Supreme Court reversed the trial court's dismissal of the motion to set aside the adoption. Because we agree with plaintiff that the trial court erred in dismissing the complaint because a fact question exists as to whether, as of February 23, 2009, plaintiff knew or should have known that defendant's acts or omissions were tortious, we do not reach plaintiff's argument regarding harm.

[6] Here, J did not sue plaintiff but, rather, moved to set aside plaintiff's adoption of A as part of the adoption case. Nonetheless, plaintiff was subjected to additional adversarial legal proceedings, and those proceedings are based upon actions that plaintiff took as a result of defendant's legal advice.

548, 699 P2d 674, *rev den*, 299 Or 583 (1985). A lawyer is in a relationship of trust and confidence with her client, and so a client does not necessarily act unreasonably in trusting that her lawyer has given her good advice. *Kaseberg*, 351 Or at 279. As we stated in *Fliegel*, "It is unrealistic to require a client to recognize that the lawyer's advice is bad, even after being sued for acting on it, until there no longer exists a realistic possibility that a court will hold that the advice was good." 73 Or App at 549. Here, we cannot say, as a matter of law, that when J filed the motion to set aside the adoption, plaintiff knew or should have known that there was no realistic possibility that a court would hold that defendant's advice—that plaintiff should sign the affidavit that defendant had drafted stating that plaintiff did not know the present whereabouts of J—"was good." *Id.*

A necessary premise of the trial court's contrary conclusion was that plaintiff knew or, in the exercise of reasonable care, should have known, that the affidavit was false. Having made that assumption, the court concluded that, when J filed the motion, plaintiff realized, or should have realized, that defendant's advice was bad. It is possible that, if a party's attorney advises the party to make what the party knows is a false statement in a court proceeding and the result of the proceeding is subsequently challenged on the basis of the false statement, the party should know that the attorney's advice was tortious. The problem is that, here, nothing in the complaint compels the conclusion that plaintiff knew or should have known that the affidavit was false more than two years before she filed the complaint.

As noted above, in the affidavit, plaintiff averred that "the present whereabouts of [J] are unknown to me." Defendant drafted that language and plaintiff signed the affidavit despite the fact that plaintiff had informed defendant that J had regular visits with R at a DHS office. Nothing about that scenario shows that, as a matter of law, plaintiff knew or should have known that the affidavit was false. The phrase "present whereabouts * * * are unknown" is susceptible to several understandings, and it is not necessarily incompatible with plaintiff's knowledge that J visited

with R.[7] For example, if plaintiff understood "present whereabouts * * * are unknown" to mean only that she did not know where J was living, she may not have understood that the affidavit might be false. Plaintiff's understanding of "present whereabouts * * * are unknown," and the point at which she realized that the averment might be incompatible with her knowledge of J's visits with R, are questions for the trier of fact.

Even if we were to conclude that, when plaintiff learned that J had filed the motion, she had some reason to suspect that defendant's conduct might have been tortious, that would not allow us to conclude that, as a matter of law, the claim accrued at that time. That is so because, even where the circumstances give rise to a duty to inquire further, which itself is a question of fact, *Cole v. Sunnyside Marketplace, LLC*, 212 Or App 509, 521, 160 P3d 1 (2007), *rev den*, 344 Or 558 (2008) "'the period of limitations would commence at some later point when, after inquiry, the facts reasonably should disclose the existence of an actionable injury.'" *Id.* at 522 (quoting *Greene v. Legacy Emanuel Hospital*, 335 Or 115, 123, 60 P3d 535 (2002)); *see also Denucci v. Henningsen*, 248 Or App 59, 69-70, 273 P3d 148 (2012) (same). After plaintiff learned of J's motion to set aside the adoption, she may have had some basis for thinking that defendant's advice—to sign the affidavit—was bad advice. However, whether she should have investigated further and, if she had, when that investigation would have yielded information from which she would have known of an actionable injury, are questions of fact. They cannot be resolved on a motion to dismiss.

"Application of the discovery rule presents a factual question for determination by a jury unless the only conclusion that a jury could reach is that the plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter." *Kaseberg*, 351 Or at 278 (citing *T. R. v. Boy Scouts of America*, 344 Or 282, 296, 181 P3d 758 (2008)). Here, the complaint alleges facts from which a jury could find that plaintiff did

---

[7] We express no opinion on the question whether, as a legal matter, the affidavit was false or incomplete in light of ORCP 7 D(6). The question we address is what plaintiff would have understood the affidavit to mean.

not know the critical facts until less than two years before filing her action.

Reversed and remanded.